# RUCKER *v.* THE STATE.

[No. 21,165. Filed June 30, 1908.]

1. JUDGMENT.—*Information for Contempt.—Defects.*—A judgment convicting defendant of contempt cannot be upheld, where the information fails to charge sufficient facts to constitute a contempt. p. 638.

2. CONTEMPT.—*Power of Courts.—Statute.*—With or without a permissive statute, courts of superior jurisdiction have the power to punish persons for a contempt, but the legislature may regulate the procedure therein. p. 638.

3. SAME.—*Indirect.—Information.—Procedure.*—To prosecute one for an indirect contempt of court it is necessary for some responsible person to file an information charging distinctly the acts showing that the authority of the court has been prejudiced, or that the administration of justice has been wrongfully interfered with; and the cause is usually tried on verified pleadings alone. p. 639.

4. SAME.—*Indirect.—Information.—Newspaper Publications.*—An information for an indirect contempt charging that because of the prosecuting attorney's sickness another person was appointed to take charge of the grand jury; that the grand jury was sworn and that it entered upon the discharge of its duties; that defendant published an article in his newspaper which might have meaning to persons residing in the locality, but which was not explained in the information, the information characterizing such article as in contempt of the court, is insufficient. p. 640.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Prosecution by the State of Indiana against Edmund P. Rucker. From a judgment of conviction, defendant appeals. *Reversed.*

*Perry L. Turner,* for appellant.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White* and *H. M. Dowling,* for the State.

HADLEY, J.—The prosecuting attorney, on October 17, 1907, filed against appellant a verified information and caused a rule or order of court to issue commanding the latter to appear and show cause why he should not be punished for contempt of court. The information set forth that on

Monday, October 14, 1907, William H. Duff, the prosecuting attorney of the thirty-fourth judicial circuit of Indiana, was present in person in said court and advised the court that he was too sick to take charge of the duties of his office at said term of said court, whereupon the court, with the advice of said prosecuting attorney, appointed James L. Harman, a member of the bar of the Elkhart Circuit Court, to assist the prosecuting attorney in matters to come before the grand jury about to be impaneled in said court; that said James L. Harman then in open court accepted said appointment and was duly qualified and sworn; that immediately afterwards the regularly drawn and duly qualified grand jury was sworn and instructed by the court, and immediately retired to enter upon the discharge of its duties; that said grand jury was in session on October 14, 15 and 16, and remained in session up to and including the date of the filing of this information; that the foregoing facts were each and all known to said Edmund P. Rucker on October 14 and 15, 1907, so far as said facts existed at said last-named date; that on October 15, 1907, said Edmund P. Rucker published and caused to be published in the Elkhart Truth, a daily newspaper of general circulation published at the city of Elkhart, a certain article, which article is in the words and figures following, to wit:

"LAWYERS OF ELKHART ARE VERY WROTH.

JUDGE DODGE'S CHARGE TO THE GRAND
JURY YESTERDAY HAS STIRRED UP
A HORNET'S NEST.

CALLS FORTH CRITICISM.

APPOINTMENT OF MR. HARMAN AS PROSE-
CUTOR DURING POLICE INVESTIGATION
IS TERMED AN ABSURDITY.

SAY JUDGE EXCEEDED AUTHORITY.

Judge Dodge threw a bomb shell in among the Elkhart lawyers yesterday by his instructions to the grand jury, with reference to the Elkhart temperance workers bringing in hired detectives to ferret out evidence of law

violations. Members of the bar to-day stated that this is a direct slap at the superior court, since the trials of the liquor cases were in the Elkhart tribunal, and there is a disposition to resent bitterly the action of the circuit court judge.

Attorneys for the civic league say they have nothing to fear from an investigation such as Judge Dodge has mapped out. They are disposed to censure the court for what they term an inappropriate, ungracious and uncalled for disposition to throw cold water on their efforts.

While none of the Elkhart lawyers would permit his name to be used, all discussed very freely the grand jury instructions of Judge Dodge, and there was a unanimity of adverse opinion.

### SUPPOSE JUDGE VAN FLEET DID SAME.

'The best illustration I can give to show how inappropriate it is for Judge Dodge to "dip in" to the affairs of the superior court,' said one lawyer, 'is to suppose that Judge Van Fleet were to assume a similar attitude with reference to the circuit court, call a grand jury to inquire into the conduct of certain cases tried in the circuit court, and haul over here a lot of Goshen ministers or other citizens to be subjected to scrutiny. The courts are of coördinate jurisdiction, and it would be just as absurd for Judge Van Fleet to do it as for Judge Dodge.'

Another lawyer thought Judge Dodge had exceeded his authority in removing the deputy prosecutors, that they were state officers, elected by the same franchises that elected Judge Dodge, and therefore to be removed only by death, resignation or impeachment.

### POLICE BOARD MEMBER AS PROSECUTOR.

'Does it not strike you as incongruous,' continued this attorney, 'that the court should give instructions for an investigation of the police department of Goshen and Elkhart, and then appoint a man prosecuting attorney who is a member of the Elkhart police board?'

'It certainly is a strange proposition to me,' said another lawyer. 'It looks as if Judge Dodge is determined to try to embarrass the superior court.'·

Judge Dodge's instructions yesterday were very comprehensive and explicit as to the investigation of superior court matters.''

that the contents of said article so published, the statements therein contained, and the publication thereof are in contempt of the Elkhart Circuit Court. Wherefore your relator says that said Edmund P. Rucker should be cited to appear in said court, and show cause, if any there be, why he should not be punished for contempt.

The rule, embodying a copy of the information, having been served upon defendant, he appeared and moved that the court discharge the rule against him, which motion was overruled and an exception reserved. He then filed a verified answer in three paragraphs, all of which become immaterial, since, under the view we have taken of the case, the only question necessary to be considered and decided is the sufficiency of the information to warrant the issuance of the writ against appellant. The case was considered on the verified pleadings, without other evidence, the defendant found guilty, and fined in the sum of $100, from which judgment he appeals.

1. As in all other legal proceedings, the judgment cannot be sustained if the information upon which it rests fails to exhibit a state of facts that will authorize the court to pronounce it. .

2. To enable courts to preserve their proper dignity and efficiency, and to ward off such scurrilous attacks and such interferences with their business, as will tend to belittle the courts and bring their authority into ridicule, it is universally recognized that tribunals of superior jurisdiction possess the power to punish all contempts of their authority, irrespective of statutory sanction. *Fishback* v. *State* (1891), 131 Ind. 304; *Cheadle* v. *State* (1887), 110 Ind. 301, 309, 59 Am. Rep. 199; *Little* v. *State* (1883), 90 Ind. 338, 46 Am. Rep. 224. But while it cannot be doubted that the power to punish contempts is inherent in the higher courts, it is well settled in this State that the legislature may reasonably regulate the exercise of the power and prescribe the rules of practice and procedure in such

cases. *Fishback* v. *State, supra; Cheadle* v. *State, supra; Little* v. *State, supra.*

In prescribing the procedure for an indirect contempt, the legislature has provided (§1047 Burns 1908, §1012 R. S. 1881) that in all cases the person charged shall be entitled, before answering or punishment, to have served upon him a rule or order of the court clearly and distinctly setting forth the facts which are claimed as constituting the contempt, and specifying the time and place of such facts with such certainty as will inform the defendant of the nature and circumstance of the charge against him, and no such rule shall issue until the facts alleged therein shall have been brought to the knowledge of the court by an information duly verified by the oath of some responsible person.

In an indirect contempt, being one committed out of the presence of the court, the facts constituting such contempt are issuable before the offended court, to be determined, as a general rule, from the verified pleadings. Hence it is evident from the provision just stated that it was the purpose of the lawmakers to prevent snap or summary judgments from being pronounced in such cases by the judge while possibly smarting under an erroneous sense of wrong, and to secure to the accused a fair opportunity of making his defense. To this end the accuser must, under the statute, clearly and distinctly state the facts relied on as the foundation of the proceeding, and, before he is entitled to a rule against the accused, he must in his information clearly show that the authority of the court has been assailed in some way tending to its prejudice, or to a harmful interference with the administration of justice. *McConnell* v. *State* (1874), 46 Ind. 298; *Worland* v. *State* (1882), 82 Ind. 49, 57; *Cheadle* v. *State, supra*; *State* v. *Rockwood* (1902), 159 Ind. 94; *Snyder* v. *State* (1898), 151 Ind. 553. Under these principles, appellant's motion to be discharged from the rule against him should have been sustained.

The information, in substance, alleged that the prosecuting attorney became sick during the September term, 1907, of the Elkhart Circuit Court, and the grand jury being about to be organized, said prosecuting attorney, on October 13, 1907, requested the court to appoint one Harman to assist him during the term in matters to come before the grand jury. The court made the appointment, Harman qualified, the grand jury was organized and instructed and immediately entered upon the discharge of its duties. The grand jury remained in session October 14, 15 and 16. It is then alleged that these facts were well known to the defendant when, on October 15, he published the article complained of. After setting out the article in full, the information concludes:

> "That the contents of said article and the statements therein contained, and the publication thereof, are in contempt of the Elkhart Circuit Court."

Outside the published article there is in the information no fact, or set of facts, alleged which, unexplained, and of themselves, can reasonably be held as being in contempt of the authority of the Elkhart Circuit Court. The allegation concerning the grand jury is in these words:

> "That immediately afterwards the regularly drawn and duly qualified  *  *  *  grand jury were sworn and instructed by the court and immediately retired to enter upon the discharge of their duties."

We can infer nothing in favor of the pleader. There is no averment that Judge Dodge delivered any special instruction to the grand jury, or that he referred to anything concerning temperance workers' bringing hired detectives into the community, or that the grand jury was considering or inquiring into any such matters. There is no averment by way of innuendo, or in explanation of the article to give to it a meaning or signification different from that usually imported by the words employed, and which words are not of themselves necessarily contemptuous to the court, or injuri-

ous to business pending therein. The reference to the instructions given the grand jury, contained in the publication, doubtless related to existing local conditions, which if explained might make clear the meaning intended to be conveyed by the article as interpreted by the prosecuting attorney, and which is subject to mere conjecture by those ignorant of the local situation.

Taken at its usual signification, the statement fairly means that Judge Dodge by his instructions to the grand jury concerning the Elkhart temperance workers procuring hired detectives to ferret out law violations, had created consternation among Elkhart lawyers. How this condition of the lawyers was a "direct slap" at the Elkhart Superior Court is left obscure by both the article and the prosecuting attorney; as is also the further statement that the attorneys of the civic league had nothing to fear from the investigation mapped out by Judge Dodge; and so the article and information run, throughout, effective in nothing but surmises to those unacquainted with local affairs. Again, it is not charged in the article that Judge Dodge instructed the grand jury to investigate the police departments of Elkhart and Goshen and then appointed a member of the Elkhart police board to take charge of the investigations. A query to that effect, in interrogative form, is reported to have been propounded by an attorney, but it is not said in the publication that the judge took any such action. The incident, whatever it was, is not alluded to in the information presented to the court, and whether it was relied on as in any way contributing to the contempt complained of the accused has no means of determining. Such loose and uncertain pleading is not in compliance with the statute.

It is clearly not sufficient for the prosecuting attorney or other informant merely to characterize the published article as in contempt of the court. Under the statute (§1047, *supra*), as interpreted by this court, and also the general

rules of pleading, the informant is required to exhibit a class of facts that will, of themselves, from their ordinary meaning, establish the contempt.

The judgment is reversed, and cause remanded, with instructions to sustain appellant's motion to dismiss the rule issued against him to show cause why he should not be held for contempt.