## LaGrange etc. v. State of Indiana.

[No. 29,627. Filed October 31, 1958. Motion to Modify
Mandate granted December 9, 1958.]

.Albert H. Gavit, of Gary, and John Anderton, of LaPorte, for appellant.

Edwin K. Steers, Attorney General, Frank E. Spencer, Assistant Attorney General and Donald M. Mosiman, Deputy Attorney General, for appellee.

. Achor, J.—Appellant was convicted upon a charge of direct contempt of court and sentenced to pay a fine of $250 and be imprisoned for 45 days. The alleged contemptuous conduct consisted of a certain radio newscast reporting an interview with a defendant in a criminal case then pending in LaPorte Circuit Court, in which the defendant was allegedly offered a sus-

pended sentence in return for a plea of guilty to a lesser offense. The pertinent part of the newscast is as follows:

". . . A most startling and blatant development has been uncovered in the Johnson murder trial by your reporter. Acting on an impulse to get the reaction of a man who is being tried for the fourth time, on a murder charge, and who has been in jail for eight and a half years, awaiting for a final verdict, I went to see Mr. Johnson last Wednesday evening in his cell at the LaPorte County Jail, and I learned that he has been offered a proposition, a proposition, that if he would plead guilty to a charge of manslaughter he would receive a suspended sentence.

"This development, of course, in our belief, is completely and astonishingly improper. We have been advised that no one, absolutely no one, is legally permitted to offer a compromise, or deal, to a man charged with murder. We have been further advised that the empaneled jury, and only the jury, can return a verdict, otherwise there would be no need for a jury, and only the judge of said trial is legally permitted to impose the sentence. *Collusion between the defense attorneys, the prosecution, and the judge, in any case,* whether this, or any other, is not ethical, yet that is what is being suggested in connection with the Johnson murder trial presently being conducted for the fourth time in the LaPorte Circuit Court. A man's life, his freedom, and the State's privilege of receiving retribution and justice for the life of one of its citizens who has been murdered is being toyed with. With this in mind *we question the ethics of those involved* in even suggesting such a deal. . . ." (pp. 10-11, 13-14 Appellant's Br.)

Following the newscast both the state and the defense joined in a motion for mistrial, which motion was granted. The special judge trying the case thereupon filed a charge for direct contempt against appellant, setting out the facts concerning the newscast and

stating that appellant had the unlawful and corrupt purpose of bringing the attorneys, the court and officers thereof, into disrepute and "embarrassing the administration of justice in the case . . . which was then and there pending." The court then and there issued a warrant and a rule to show cause, after which appellant filed a motion to discharge the rule or, in the alternative, to proceed with the case as for indirect contempt, pursuant to §3-911, Burns' 1946 Replacement, which requires the appointment of a special judge. These motions were overruled and appellant then tendered his verified answer, which the court refused to receive. The judge then held a brief summary hearing in which he interrogated appellant concerning the statements in his answer. The judge permitted questioning of appellant by his attorney but refused to permit the calling of any witnesses. Appellant, during said questioning, admitted making the newscast substantially as set out in the judge's charge, but denied any disrespect or intent to impute corrupt or improper conduct to the court or to the attorneys, and also denied any intent to interfere with the administration of justice in the pending criminal trial.

As cause for a new trial, appellant asserts that his conduct, if contemptuous at all, was indirect contempt at most, and that in the trial of the case he was denied the procedural safeguards which are guaranteed to him by statute.

The power to punish for contempt is inherent in every court of superior jurisdiction in Indiana. This power is essential to the existence and functioning of our judicial system, and the legislature has no power to take away or materially impair it. *Little* v. *The State* (1883), 90 Ind. 338; *Holman* v. *The State* (1886), 105 Ind. 513, 5 N. E.

556; *Cheadle* v. *The State* (1887), 110 Ind. 301, 11 N. E. 426. However, the legislature may regulate the exercise of the inherent contempt power by prescribing rules of practice and procedure. *Little* v. *The State, supra; Rucker* v. *State* (1908), 170 Ind. 635, 85 N. E. 356; *Mahoney* v. *State* (1904), 33 Ind. App. 655, 72 N. E. 151; *Hiner* v. *State* (1932), 204 Ind. 7, 182 N. E. 245.

For procedural purposes, the Indiana Legislature has classified actions for contempt generally into two categories—direct, under §§3-901 and 3-902, and indirect under §§3-903, 3-904 and 3-905. The Legislature has also provided for two distinct and different forms of trials in such actions. Section 3-907 prescribes the practice and procedure for direct contempt,[1] and §§3-908 to 3-912, inclusive prescribes the practice and procedure for indirect contempt.[2]

1. Under §3-907, *supra*, no formal charge or affidavit is required; the court simply states the conduct constituting the contempt, which statement must be reduced to writing. The defendant is permitted to make a statement in extenuation or explanation. The court enters judgment and defendant, if convicted, may then move for reconsideration and support his motion by affidavits of persons who heard or saw the conduct. But since the conduct is within the presence or direct knowledge of the court, he cannot deny the statement of the judge as to the facts, which imports absolute verity. *Holman* v. *The State, supra*, 105 Ind. 512, 5 N. E. 556.

2. Under §§3-908 to 3-912, inclusive, conduct not coming within the confines of direct contempt, as defined above, must be treated as indirect or constructive contempts. In such a case the facts constituting contempt must be brought to the attention of the court by verified information. The court must then issue a rule to show cause which "shall clearly and distinctly set forth the facts which are alleged to constitute the contempt," (§3-908) and set a time for answer. To an information for indirect contempt the defendant is permitted to file an answer and if he denies the charges or explains them in such a way as to show that no contempt was intended, the court is required to acquit and discharge him; but if he does not sufficiently deny, explain or avoid the facts, the court may proceed to attach and punish him. See *Cheadle* v. *The State, supra* (110 Ind. 301, 11 N. E. 426); *Fishback* v. *The State* (1892), 131 Ind. 304, 30 N. E. 1088; *Ray* v. *State* (1917), 186 Ind. 396, 114 N. E. 866; *Nixon* v. *State* (1935), 207 Ind. 426, 193 N. E. 591; *State ex rel. Indpls. Bar*

Direct contempt, as defined in §§3-901 and 3-902, *supra,* in general, means conduct directly interfering with court proceedings while court is in session, including creation of noise or confusion, disrespectful conduct and refusing to take the witness stand in a trial. It has been stated in the cases defining such contempt that such conduct must take place in or immediately adjacent to the courtroom and while court is in session, so that the judge has personal knowledge of such conduct in his official capacity. See *Whittem* v. *The State* (1871), 36 Ind. 196; *Ex Parte Wright* (1879), 65 Ind. 504; *Holman* v. *The State, supra; Snyder et al.* v. *The State* (1898), 151 Ind. 553, 52 N. E. 152; *State ex rel. Stanton* v. *Murray; Stanton* v. *State* (1952), 231 Ind. 223, 108 N. E. 2d 251.

However, in other cases courts have held that, under the inherent power theory, the above statutory definitions of contempt are not so all-inclusive as to ■■ exclude other acts or conduct which may constitute contempt. For example, contemptuous statements in pleadings or official reports filed in court but not read in open court have also been held by this court to constitute direct contempt as analogous to oral statements made in open court. See *Kerr* v. *State* (1923), 194 Ind. 147, 141 N. E. 308.; *Coons* v. *State* (1922), 191 Ind. 580, 134 N. E. 194. Also, it has been held that an assault upon a judge by a litigant, away from the court, after the judge refused to discuss the case with him, constituted direct contempt. *Turquette* v. *State* (1927), 174 Ark. 875, 298 S. W. 15, 55 A. L. R. 1227. In each instance the misconduct was within the personal knowledge of the judge and was directly

*Assn.* v. *Fletcher Tr. Co.* (1937), 211 Ind. 27, 5 N. E. 2d 538; *Dossett* v. *State* (1948), 226 Ind. 142, 78 N. E. 2d 435. In addition, under §3-911, in most cases of indirect contempt a disinterested judge must be appointed to try the case.

applied or communicated to him in a manner different than the general public. Indirect contempt on the other hand, is generally characterized by the act as disobeying process (§3-903, *supra*), resisting process or intimidating a witness out of the presence of the court (§3-904, *supra*), or making any false or grossly inaccurate report of any proceeding while the same is pending before the court (§3-905, *supra*).

The question which this court must determine is whether, on the basis of the statute and prior decisions, which have defined direct contempt of court, appellant's conduct, although reprehensible, constituted *direct* contempt, for which he was tried in the manner prescribed by the statute for direct contempt.

In support of his position that the conduct of the appellant constituted direct contempt, for which he was tried, appellee relies heavily upon the case of *Dale* v. *State* (1926), 198 Ind. 110, 150 N. E. 781, in which a conviction of contempt for publication of an article imputing corruption and favoritism to a grand jury, was upheld. In that case the only procedural holding was that the defendant had no right to a change of venue from the judge. [In 1926 there was no right to such change of venue in any case of contempt.] The opinion in the Dale case, *supra,* does contain language which indictes the case could properly be treated as one of direct contempt. It is not clear from the opinion just what procedure was followed. It does appear that a verified answer was filed denying any contemptuous intent, which procedure is contemplated only in indirect contempt proceedings. However, apart from the case of *Dale* v. *State, supra,* to our knowledge every Indiana case, in which the publication of a newspaper report or comment was charged as constituting contempt, the contempt has been treated as indirect or constructive, and the action has followed the proce-.

dure of verified information, rule to show cause and answer. *Cheadle* v. *The State (supra)*, 110 Ind. 301; *Fishback* v. *The State* (1892), 131 Ind. 304, 30 N. E. 1088; *Rucker* v. *State* (1908), 170 Ind. 635, 85 N. E. 356; *Ray* v. *State* (1917), 186 Ind. 396, 114 N. E. 866; *Kilgallen* v. *State* (1922), 192 Ind. 531, 132 N. E. 682; *Nixon* v. *State* (1935), 207 Ind. 426, 193 N. E. 591. *Cf. State* v. *Shumaker* (1927), 200 Ind. 623, 157 N. E. 769, 162 N. E. 441, 163 N. E. 272. (Contempt of Supreme Court not under statute. See §3-910, *supra*.)

In the recent case of *Stanton* v. *State* (1952), 231 Ind. 223, 108 N. E. 2d 251, in which this court viewed the publication of a newspaper article as the underlying basis of the charge, a conviction of direct contempt was reversed. Also, in cases from other jurisdictions involving contempt by publication, the procedure followed was for indirect or constructive contempt under the law of those jurisdictions. See *Bridges* v. *Superior Court* (1939), 14 Cal. 2d 464, 94 P. 2d 983; *The Times Mirror Co.* v. *Superior Court* (1940), 15 Cal. 2d 99, 98 P. 2d 1029; *Pennekamp et al.* v. *State* (1945), 156 Fla. 227, 22 So. 2d 875; *Ex Parte Craig* (1946), 150 Tex. Cr. 598, 193 S. W. 2d 278.[3]

Considerations, applicable to publication in a newspaper, would seem to apply with equal force to radio newscasts. In both instances the act alleged to be contemptuous takes place away from the courtroom. Therefore, there is no greater likelihood of psyhical disturbance of court proceedings nor to coerce or influ-

---

3. These cases were reversed by the United States Supreme Court generally on the ground that the particular publications were within constitutional protection guaranteeing freedom of the press and did not sufficiently endanger the administration of justice to take them outside the cloak of that protection. *Bridges* v. *California* (1940), 314 U. S. 252, 86 L. Ed. 192, 62 S. Ct. 190, 159 A. L. R. 1346; *Pennekamp* v. *Florida* (1946), 328 U. S. 331, 90 L. Ed. 1295, 66 S. Ct. 1029; *Craig et al.* v. *Harney* (1947), 331 U. S. 367, 91 L. Ed. 1546, 67 S. Ct. 1249.

ence a decision in the case; and statements made are, in each instance, widely disseminated to the general public. In either instance the judge may obtain personal knowledge of the conduct, through reading the newspaper or hearing the radio broadcast.[4] We see no reason for applying a different rule to radio stations than is applied to newspapers, since each is a form of publication with substantially similar purposes—to inform and, possibly, influence the public.

Therefore, insofar as the *Dale* case, *supra* (198 Ind. 110), may be thought to hold that the summary procedure of direct contempt may be employed in cases of contempt by ordinary publication, it is inconsistent with earlier and later Indiana cases and is disapproved.[5]

It follows from the foregoing discussion that the charge against appellant LaGrange should have been treated as an action for indirect contempt and tried accordingly. This was not done in the instant case. Therefore, judgment must be reversed and a new trial ordered.

Although appellant filed a verified answer in this case, which is in the record, the trial court refused

---

4. In the instant case there is no evidence the judge heard the actual newscast.

5. In stating that summary process is proper in such cases, the Dale case, *supra* (198 Ind. 110), relied in part on *Toledo Newspaper Co.* v. *United States* (1916), 237 Fed. 986, affirmed in 247 U. S. 402, 62 L. Ed. 1186, 38 S. Ct. 560 (1918). However, the Toledo Newspaper case, *supra,* was overruled by *Nye* v. *United States* (1941), 313 U. S. 33, 85 L. Ed. 1172, 61 S. Ct. 810. Under the Nye case, *supra,* the power of Federal Courts to punish for contempt is limited by statute to three classes of cases, none of which would cover an out-of-court publication (now 18 U. S. C., §401). Under the Nye case, types of conduct interfering with the courts in the administration of justice, may be punishable under a separate section of the Penal Code (e.g., 18 U. S. C., §1503), to which ordinary criminal procedure would apply. The Nye case, *supra,* does not purport to limit the power of state courts to punish for acts of contempt which would not be so punishable under the Federal statute.

698

to receive and consider it as part of the proceedings and has never ruled on the issue presented. It is therefore inappropriate for this court to rule on the sufficiency of appellant's verified answer.[6]

Furthermore, since this case must be dismissed for failure to follow the proper procedure and was not tried upon its merits, and since this court does not have the benefit of a record of such trial, it would be inappropriate for us to consider appellant's contention that the radio broadcast is constitutionally protected speech under the First and Fourteenth Amendments as applied in *Bridges v. California* (1940), 314 U. S. 252, 86 L. Ed. 192, 62 S. Ct. 190, 159 A. L. R. 1346; *Pennekamp v. Florida* (1946), 328 U. S. 331, 90 L. Ed. 1295, 66 S. Ct. 1029; *Craig et al. v. Harney* (1947), 331 U. S. 367, 91 L. Ed. 1546, 67 S. Ct. 1249. See also, *Baltimore Radio Shows, Inc. v. State* (1948), 193 Md. 300, 67 A. 2d 497, cert. den. with opinion, 338 U. S. 912.

Judgment reversed with directions to sustain appellant's motion to dismiss.

Bobbitt, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 153 N. E. 2d 593.

6. In a case of indirect contempt by publication, if a defendant in his verified answer denies any contemptuous intent, he must be discharged unless the language used, without the aid of innuendoes, is clear and not susceptible to a construction consistent with innocent intent. *Ray v. State, supra* (186 Ind. 396, 114 N. E. 866); *Fishback v. The State, supra* (131 Ind. 304, 30 N. E. 1088); *Kilgallen v. State, supra* (192 Ind. 351, 132 N. E. 682); *Nixon v. State, supra* (207 Ind. 426, 193 N. E. 591); *Cf. Smith, Administrator v. Miller, Guardian* (1935), 209 Ind. 55, 197 N. E. 892; *State ex rel. Indpls. Bar Assn. v. Fletcher Tr. Co.* (1937), 211 Ind. 27, 5 N. E. 2d 538.