

I N T H E

# Court of Appeals of Indiana

In the Matter of the Guardianship of Zachary Graykowski;

Members Source Credit Union,

*Appellant*

v.

Zachary Graykowski,

*Appellee*



FILED

Aug 26 2025, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

August 26, 2025

Court of Appeals Case No.
25A-GU-526

Appeal from the Lake Circuit Court

The Honorable Jewell Harris, Jr., Probate Commissioner

The Honorable Marissa McDermott, Judge

Trial Court Cause No.
45C01-1007-GU-73

---

**Opinion by Judge Tavitas**
Judges Vaidik and Felix concur.

**Tavitas, Judge.**

## Case Summary

Members Source Credit Union ("Members Source") appeals the trial court's order finding Members Source in contempt for violating a guardianship order. Members Source argues that the trial court abused its discretion by finding that Members Source willfully violated the order. We agree and, accordingly, reverse.

## Issue

Members Source raises one issue, which we restate as whether the trial court abused its discretion by finding Members Source in contempt.

## Facts

On July 2, 2010, Dawn Graykowski ("Mother") filed a "verified petition for appointment of guardian over the claim of a minor" related to a $166,037.11 injury settlement received by her then fourteen-year-old son, Zachary Graykowski. Appellant's App. Vol. II p. 11. Mother sought "a limited guardianship over [Zachary] so that [Mother could] accept the proceeds of the settlement on behalf of [Zachary] for [Zachary's] benefit." *Id*. at 12. On July 7, 2010, the trial court granted the petition and appointed Mother guardian "for the limited purpose of collecting the claim of [Zachary][.]" *Id*. at 16. The trial court ordered Mother to "provide proof to the court that upon receipt of the claim a restricted guardianship account is opened . . . ." *Id*.

[4] Although the trial court's order granted Mother only a limited guardianship, the court issued letters of guardianship indicating that Mother's guardianship was "without limitations, per court order[.]" *Id*. at 17. Mother filed an oath and accepted the guardianship on July 8, 2010. On August 3, 2010, Mother filed an affidavit for proof of account and deposit of the injury settlement into a newly opened account with Member Source.

[5] Years later, on February 12, 2024, Zachary moved for an accounting of the funds deposited into the guardianship account. Zachary alleged that Mother "continues to advise him that the time is not yet appropriate for the disbursement of the funds to him, thereby causing him to suspect that [Mother] has converted the funds held for his benefit to her own personal use" and that Members Source "has advised him that it has no account relating to him now opened in its branches." *Id*. at 20. The trial court granted the motion on March 7, 2024, and ordered Mother and Members Source to provide an accounting of the funds.

[6] Neither Mother nor Members Source filed an accounting of the funds, and on June 28, 2024, the trial court scheduled a hearing for rule to show cause to be held on June 30, 2024. Members Source subsequently produced the accounting, which showed that, within thirteen months after the guardianship account was opened, the account had been "drained." Tr. Vol. II p. 25. Mother testified at the hearing that she withdrew from the account using cash withdrawals, cashier's checks, and transfers to her own accounts at Members

Source.  She used account funds to pay for vacations, furniture, and Zachary's medical bills.

[7]     Michelle Rokosz testified on behalf of Members Source.  Rokosz testified that the guardianship account was opened on July 16, 2010, and closed on October 25, 2012.  Members Source "would have had a copy" of the trial court's order appointing Mother guardian when opening the account.  *Id.* at 13.  Members Source permitted Mother to draw from the account because, "[if] there is nothing to state that no withdrawals are to be made until a certain age in the paperwork then yes, if the parent is a guardian, then . . . . there is nothing to stop them from withdrawing or transferring money because they're the manager of the account."  *Id*. at 11.

[8]     Following the hearing, Zachary filed a petition for rule to show cause against Mother and Members Source.  Zachary requested that the trial court "find that [Mother] and Member Source Credit Union willfully failed to comply with the orders of the Court requiring the establishment of a restricted guardianship account for a minor child [and] willfully permitted [Mother] to deplete the guardianship account."  Appellant's App. Vol. II p. 31.  He requested that the trial court award him attorney fees as a sanction.

[9]     The trial court held a hearing on the petition on December 17, 2024, and Mother did not appear.  President James Falls testified on behalf of Members Source.  Falls claimed that the guardianship account was restricted because

"nobody could access the money but the guardian." Tr. Vol. II p. 26. When questioned by the court regarding the restrictions, Falls testified:

> We follow the court orders. Now if the Court wants to define what a restricted account is and define it so we can know, then we'll be happy to follow those rules. But according to what we have from our compliance department, we've created a restricted account.

*Id.* at 26. Members Source's Executive Vice President also testified. Following the testimony, Zachary asked that Mother and Members Source "be held in contempt for breach of the restricted account provision of the Court's order." *Id.* at 29.

[10] The trial court found Mother and Members Source in contempt for violating the guardianship order. Following the hearing, the trial court issued written findings in support of its contempt finding. The order provides:

> 4. Orders of the Court required that the funds be placed in a restricted account on behalf of [Zachary].
>
> 5. From testimony presented to the Court on July 30, 2024, a representative of Members Source Credit Union reported that instead of putting the funds in a restricted account, Members Source Credit Union did not put the funds in a restricted account but permitted [Mother] unfettered control over the funds of the guardianship account including the transfer [of] guardianship funds to her personal account, also with Members Source Credit Union.

6. The withdrawals from the guardianship account permitted by [Mother] and Members Source Credit Union were so extensive that by September 30, 2011, less than $44.00 of $166,037.11 remained in the account.

7. The testimony of Members Source Credit Union President and Executive Vice President is in direct contrast to the testimony presented to the Court on July 30, 2024, regarding the establishment of a restricted account for the guardianship funds of Zachary Graykowski.

8. [Mother] is entrusted with the care and financial well being of [Zachary].

9. [Mother] has misappropriated guardianship funds, failed to account for expenditures, and has acted in a manner that benefited herself at [Zachary's] expense.

10. Members Source Credit Union, in allowing [Mother] to transfer funds from the guardianship account to her personal account and to make cash withdrawals without any inquiry or safeguards required by a restricted account for a minor, breached the orders of the Court requiring the financial organization holding guardianship funds to protect those guardianship funds.

11. The conduct of [Mother] and Members Source Credit Union in permitting the depletion of the court ordered restricted guardianship account for a minor within a period of less than 14 months from the July 20, 2010, establishment of the account has been willful and contumacious.

Pursuant to Indiana Code § 34-47-3-1, Members Source Credit Union and [Mother] are each held in contempt.

Appellant's App. Vol. II pp. 9-10.  The trial court ordered Mother and Members Source to pay Zachary's attorney fees as a sanction for the contempt finding.[1]  Members Source now appeals.

## Discussion and Decision

[11]  Members Source argues that the trial court abused its discretion by finding Members Source in contempt.  "'Trial courts maintain considerable discretion in determining whether a party should be found in contempt of court, and these determinations are reviewed for an abuse of discretion.'"  *In re N.E.*, 228 N.E.3d 457, 478 (Ind. Ct. App. 2024) (quoting *In re Paternity of B.Y.*, 159 N.E.3d 575, 577 (Ind. 2020)).  "Our court will reverse a finding of contempt only if there is no evidence or inferences drawn therefrom that support it."  *Id.* (quotation omitted).

[12]  "Contempt of court generally involves disobedience of a court or court order that undermines the court's authority, justice, and dignity."  *Id.* (citing *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016)).  There are two kinds of contempt: direct contempt and indirect contempt.  *Id.* (citing *Reynolds*, 64 N.E.3d at 832).  Only indirect contempt is at issue here, and it "involves those acts committed outside the presence of the court which nevertheless tend to interrupt, obstruct, embarrass or prevent the due administration of justice," typically through the

---

[1] The trial court limited its determination to the contempt finding; the trial court reserved ruling on whether Members Source and/or Mother breached their fiduciary duties and were liable for the depleted funds until a complaint alleging the same is filed.

disobedience, resistance, hindrance, or delay of a lawfully issued court order. *Id.* (citing *Reynolds*, 64 N.E.3d at 832); Ind. Code § 34-47-3-1.[2]

[13] It is well established that:

> "[t]o be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order . . . otherwise, a party could be held in contempt for obeying an ambiguous order in good faith."[3]

*Ferrill v. Ferrill*, 143 N.E.3d 350, 357 (Ind. Ct. App. 2020) (quoting *Bandini v. Bandini*, 935 N.E.2d 253, 264-65 (Ind. Ct. App. 2010) (internal quotation marks omitted); *accord City of Gary v. Major*, 822 N.E.2d 165, 170-71 (Ind. 2005).

---

[2] Indiana Code Section 34-47-3-1 provides:

> A person who is guilty of any willful disobedience of any process, or any order lawfully issued:
>
> (1) by any court of record, or by the proper officer of the court;
>
> (2) under the authority of law, or the direction of the court; and
>
> (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

[3] We note that Members Source was not made a party to this action. We have explained that "Indiana trial courts have inherent authority to enforce their orders through contempt powers, even against nonparties." *In re Paternity of N.T.*, 961 N.E.2d 1020, 1022 (Ind. Ct. App. 2012) (citing *Owen v. Vaughn*, 479 N.E.2d 83, 87-88 (Ind. Ct. App. 1985); *La Grange v. State*, 153 N.E.2d 593, 595 (Ind. 1958)). "'One not a party who has knowledge of a court order but nevertheless aids, conspires with, and abets a party to an action in violating a court order entered therein, may be punished for contempt.'" *Id.* at 1023 (quoting *Owen*, 479 N.E.2d at 86). Here, neither party argues that Members Source's status as a nonparty affects the contempt finding.

In the present case, we conclude that the guardianship order was ambiguous and the trial court erred by finding that Members Source willfully violated the order. First, the guardianship order and the letters of guardianship conflict regarding the scope of the guardianship. Indiana Code Section 29-3-7-3 provides:

> (a) Letters of guardianship, temporary or otherwise, shall be issued to the person entitled to receive them[.]
>
> * * * * *
>
> (c) **If the court limits or restricts the authority of the guardian or creates a limited guardianship, the letters must so state** under IC 29-3-8.

(Emphasis added).

Indiana Code Section 29-3-8-8 similarly provides:

> (a) The court, at the time of appointment or later, on its own motion or on petition of the protected person or other person approved by the court, may:
>
> * * * * *
>
> > (3) limit the responsibilities and powers of the guardian otherwise conferred by this article and create a limited guardianship.
>
> (b) However, **all limitations must be endorsed on the guardian's letters.** Following the same procedure, a limitation

> may be removed or modified and appropriate revised letters issued[.]

(Emphasis added).

[16] Here, the guardianship order provides that the guardianship existed "for the limited purpose of collecting the claim of [Zachary]," but the letters of guardianship state that the guardianship was "without limitations, per court order[.]" Appellant's App. Vol. II pp. 16-17. The scope of the guardianship, thus, was unclear. *See City of Gary*, 822 N.E.2d at 171 (analyzing whether order forming basis for contempt finding contained "conflicting terms or provisions").

[17] Second, the guardianship order required Mother to open a "restricted guardianship account[.]" Appellant's App. Vol. II p. 16. The order did not specifically require or order Members Source to do anything. Moreover, the order did not delineate the restrictions on the account Mother was to open. Members Source employees testified that it opened a restricted account that limited access to the guardian, Mother; the minor ward could not access the account; and that this complied with Members Source's policies. *See Bowyer v. Ind. Dept. of Nat. Res.*, 798 N.E.2d 912, 918-20 (Ind. Ct. App. 2003) (holding that Bowyer could not be held in contempt for violating temporary restraining order that prohibited performing "any and all excavation/construction activities, of any nature whatsoever, below the shoreline of Lake Cicott" when the order did not define and the Department of Natural Resources had not yet established the lake's shoreline; the order, thus, was "ambiguous").

[18] We also note that, at the time the guardianship was created, Lake County Probate Rule 67 provided:

> Where an account with expenditures restricted by Court order has been created, an acknowledgement of or acquiescence to the restriction by the financial institution involved must be filed by the guardian's Attorney within ten (10) days of the Court Order creating such an account. (SEE ATTACHED FORM)[.]

The referred-to attached Form E, which was not submitted to the trial court, provided:

**Form E.  Certificate of Account Restriction**

**CERTIFICATE OF RESTRICTION OF ACCOUNT IN COMPLIANCE WITH LAWYER'S UNDERTAKING**

The undersigned hereby certifies that he/she is an Officer or employee of the below named financial institution and that the following account has been opened:

Type of Account: _____
Account Number: _____
Amount Deposited: _____
Owner per Signature Card or Document of Title: _____

The undersigned further certifies that a copy of the Order of the Superior Court of Lake County has been examined in full by us and that the terms of this account included a restriction that withdrawal of principal or interest may be made only on written order of the Superior Court of Lake County, or upon the Protected Person reaching the age of majority.

DATE: _____    _____

Name of Financial Institution

_____

Signature

_____

Printed

_____

Title

Here, the guardianship order did not delineate the restriction to which Members Source was to "acknowledge[]" or "acquiesce[,]" and the record does not demonstrate that Mother filed a Form E. The guardianship order only required Mother to file "proof of complete deposit" of the claim, which Mother did. Appellant's App. p. 16.

Given the lack of clarity in the guardianship order and the erroneous letters of guardianship, we cannot say that Members Source willfully disobeyed the court's order; thus, it cannot be held in contempt of court.

## Conclusion

The trial court abused its discretion by finding Members Source in contempt. Accordingly, we reverse the judgment of the trial court.

Reversed.

Vaidik, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT
Kevin E. Steele
Bryan E. Bott
Burke Costanza & Carberry LLP
Valparaiso, Indiana

ATTORNEY FOR APPELLEE
John E. Hughes
Hoeppner Wagner & Evans, LLP
Valparaiso, Indiana