733 P.2d 795

**In re CONTEMPT OF Reginald REEVES, Attorney.**

**Reginald REEVES, Petitioner-Appellant,**

v.

**Honorable Jerry D. REYNOLDS, Respondent.**

**No. 16365.**

Court of Appeals of Idaho.

Feb. 11, 1987.

Petition for Review Denied April 24, 1987.

Marc J. Weinpel of Weinpel, Woolf, Just, Combo & Davis, Idaho Falls, for petitioner-appellant.

Dona A. Pike, Idaho Falls, for respondent.

SWANSTROM, Judge.

The appellant, Reginald Reeves, is a licensed attorney in the State of Idaho. A magistrate found Reeves in contempt of court and fined him $500 for directing his client to disobey a court order. Reeves' arguments on appeal fall into two general categories. First, he asserts that the contempt sanction must be reversed because it is based on the violation of a void order. Second, he argues that certain defects in the initiation and conduct of the contempt proceedings mandate a reversal. We find

Reeves' arguments to be without merit, and affirm the magistrate's order.

The facts may be briefly stated. Reeves represented the wife in a divorce action. The husband obtained an *ex parte* order temporarily prohibiting the wife from "interfering with [the husband's] custody" of the couple's child. The order provided for a hearing sixteen days later. Before the scheduled hearing, however, the husband filed a motion, supported by affidavits, asking that the wife "and/or her attorney of record Reginald R. Reeves" be found in contempt of court for violating the *ex parte* order. The affidavits, sworn by the husband and by the director of a day care center which the child attended, recited that the wife removed the child from the center without the consent of the husband and over the objection of the director, and refused to return the child for several days. The wife told the director that "she had talked to her attorney Mr. Reeves and that he said that she could go to the Day Care Center and take the minor child ... because the Restraining Order was no good."

A hearing was scheduled on the motion for a contempt order, and notice was served upon Reeves by personal delivery to his office in accordance with I.R.C.P. 5(b). On several occasions the date of hearing was postponed. In each case, an amended notice was delivered to Reeves' office. The final notice was given nearly two weeks before the hearing. The final notice was given nearly two weeks before the hearing. Meanwhile the wife obtained substitute counsel. The motion for contempt was dismissed as to her, but not as to Reeves. The day before the contempt hearing actually was held, an affidavit by the wife was delivered to Reeves' office. Reeves was out of town and did not attend the hearing. The magistrate found Reeves in contempt and initially ordered him to pay a $1,000 fine.[1] Reeves filed a "Motion to Reconsid-

---

1. The magistrate did not state whether he was finding Reeves guilty of criminal or of civil contempt. However, we deem it evident that the contempt citation in this case was criminal.

The distinction between civil and criminal contempt lies not so much in the penalties imposed as in the purpose. Where the primary purpose of the penalty is to coerce compliance with an

er," supported by affidavit, and a hearing was held. The magistrate denied the motion, except that he reduced the fine to $500. Reeves sought relief in the district court. That court affirmed the magistrate's order, and Reeves appealed to this court.

## I

The first issue presented is the scope of review to be accorded Reeves' request for relief. Reeves denominated his request to the district court a "Petition for Writ of Review or, in the alternative, Notice of Appeal." The district court treated the request as a writ of review. The writ of review was denied, and Reeves "appealed" to this court.

The apparent confusion of the parties—as to whether relief from a contempt order is available only through a writ of review or whether an appeal can be taken—is understandable. For nearly a century, our Supreme Court considered contempt orders not to be appealable. *See, e.g., Glenn Dale Ranches, Inc. v. Shaub,* 95 Idaho 853, 522 P.2d 61 (1974); *Mathison v. Felton,* 90 Idaho 87, 408 P.2d 457 (1965); *Levan v. Richards,* 4 Idaho 667, 43 P. 574 (1896). This position was grounded in a statute, I.C. § 7–614, which states that "[t]he judgment and orders of the court or judge, made in cases of contempt, are final and conclusive." Although the Supreme Court interpreted this statute to bar the *appeal* of contempt orders, it did not consider the statute to preclude all scrutiny of trial court actions. Idaho Code § 7–202 empowered a superior court to issue a writ of review in circumstances, such as contempt cases, where no appeal could be taken. However, the court's power of review under such a writ was limited to a determination whether the lower court "exceeded its jurisdiction." *Barnett v. Reed,* 93 Idaho 319, 460 P.2d 744 (1969); *Mathison v. Felton, supra; Levan v. Richards, supra;* I.C. § 7–208 (review limited to determination whether inferior tribunal "regularly pursued [its] authority").

This restricted review apparently troubled the appellate courts. Understandably, the Supreme Court often desired to reach beyond subject matter and personal jurisdiction to correct other errors of the trial court. As a result, the term "jurisdiction" was used very broadly in a series of cases. *See, e.g. Marks v. Vehlow, supra* (civil contempt sanctions subject to appellate review for abuse of discretion); *Mathison v. Felton, supra* (lower court acted in excess of jurisdiction where no substantial evidence supported finding of contempt); *Hay v. Hay,* 40 Idaho 159, 232 P. 895 (1924) (lower court exceeded jurisdiction where it held person in contempt in absence of showing that he was able to comply with order). In this approach, our Supreme Court was not alone. *See, e.g., In Re Berry,* 68 Cal.2d 137, 65 Cal.Rptr. 273, 280, 436 P.2d 273, 280 (1968) ("any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction."); Cox, *The Void Order and the Duty to Obey,* 16 U.CHI.L.REV. 86, 90 (1948) (hereinafter Cox) (noting that the United States Supreme Court has "extended the concept of jurisdiction ... into areas where the propriety of its application is open to question").

Eventually, our Supreme Court altered its view regarding the prohibition against appeals in contempt cases. In *Jones v. Jones,* 91 Idaho 578, 428 P.2d 497 (1967), the court agreed to entertain the appeal of a contempt order, "inasmuch as respondent

order of the court, the contempt is civil. Where the goal is to punish the contemnor for past acts, the contempt is criminal. *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Gompers v. Buck Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Marks v. Vehlow,* 105 Idaho 560,

671 P.2d 473 (1983). Here, the child had been returned to custody and Reeves no longer represented the wife at the time he was found in contempt. The magistrate found that the conduct of Reeves was "inexcusable," and concluded that he "must be punished."

does not challenge the appeal ... and since Idaho's Constitution, Art. 5, § 9, provides that '[t]he Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts....'" *Id.* at 580, 428 P.2d at 499. In a concurring opinion, Chief Justice Taylor argued that I.C. § 7–614 had been misconstrued by the Court. Rather than barring an appeal, he believed, the statute should be interpreted to make a contempt order final and appealable, even though the order is issued before final judgment is entered in the action. He further suggested that I.C. § 13–201, which then provided that an appeal could be taken "from any special order made after final judgment," effectively displaced the prior interpretation of I.C. § 7–614. The Court did not immediately embrace Justice Taylor's position, but it did continue to hold that the Court had plenary power under the Idaho Constitution to hear appeals of contempt orders in the discretion of the Court. *See Marks v. Vehlow, supra; Lester v. Lester,* 99 Idaho 250, 580 P.2d 853 (1978); *Parker v. Parker,* 97 Idaho 209, 541 P.2d 1177 (1975). However, the Court indicated a reluctance to exercise that discretionary power. *Marks v. Vehlow, supra; Lester v. Lester, supra.*

The Legislature subsequently took action which supported Justice Taylor's position. In 1977, I.C. § 13–201 was amended to provide that "[a]n appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments, and within such times and in such manner as prescribed by Rule of the Supreme Court."[2] The court soon acted under this new authority. The first step was taken in the Idaho Criminal Rules. Idaho Criminal Rule 54(a)(8), adopted in 1979, allows a party to appeal from the magistrate division to a district court "[a]ny order holding a person in contempt of court other than those contempts defined in Rule 42(a)." In 1985, the Supreme Court amended I.R.C.P. 83(a)(2) to allow an appeal to the district court of "any contempt order or judgment certified by

the [magistrate] to be final as provided by Rule 54(b)...." Similarly, I.A.R. 11(a)(3) was amended to allow "an appeal as a matter of right" from any contempt order or judgment so certified. The latter two amendments took effect on July 1, 1985, nearly four months before the district court granted an "Amended Writ of Review" of the magistrate's contempt order in this case.

 The magistrate in this case did not certify the judgment against Reeves as final. Rule 54(b) states that "when multiple parties are involved, the court may direct the entry of a final judgment upon one or more but less than all of the ... parties ..." only upon the proper showing. As our Supreme Court has explained, the purpose of Rule 54(b) is to avoid piecemeal litigation and appeals. *Long v. Goodyear Tire and Rubber Co.,* 100 Idaho 183, 595 P.2d 717 (1979). Lack of certification would usually bar the appeal of a contempt order. *Id.* However, this is not a case where a contempt order was entered against one of multiple parties to a suit. Reeves was not a party to the suit at all. At the time the contempt order was entered, he no longer had any involvement with the suit whatsoever. We do not believe that the Supreme Court intended the certification provision to apply to nonparties, at least where all involvement with the suit has been severed. This is consistent with the federal approach that a contempt order against a nonparty is the subject of an immediate appeal. *See, e.g., Fenton v. Walling,* 139 F.2d 608 (9th Cir.1943), *cert. denied,* 321 U.S. 798, 64 S.Ct. 938, 88 L.Ed.2d 1086 (1944). We conclude it was proper for the district court to entertain Reeves' appeal.

 Because we treat this matter as arriving before us on appeal, rather than on writ of review, we need not limit the scope of review to questions of "jurisdiction." Rather, we will review contempt orders in the same manner as other judgments of trial courts. Although the stated scope of review has thus been modified, we

---

**2.** A criminal counterpart to the civil statute is found in I.C. § 19–2801.

do not believe that this change will often affect the outcome of cases. As stated above, Idaho's appellate courts have stretched the import of the term "jurisdiction" in contempt cases far beyond its natural meaning, to the extent that the distinction between normal appellate review and review by writ has become virtually imperceptible. *See* Storti and Bush, *Extraordinary Proceedings in the State and Federal Appellate Courts,* IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc. 1985). Prior case law thus remains useful. For example, we will continue to review the procedures followed by trial judges in adjudicating contempt. *See, e.g. First Security Bank of Idaho, N.A. v. Hansen,* 107 Idaho 472, 690 P.2d 927 (1984); *State v. Palmlund,* 95 Idaho 150, 504 P.2d 1199 (1972); *Bandelin v. Quinlan,* 94 Idaho 858, 499 P.2d 557 (1972). We will review a contempt order to determine whether the finding that the contemnor committed a contemptuous act is supported by substantial evidence. *See Mathison v. Felton, supra; Vollmer v. Vollmer,* 46 Idaho 97, 266 P. 677 (1928); *Amlin v. Hamilton,* 108 Idaho 320, 698 P.2d 838 (Ct.App. 1985). We will also inquire whether a penalty exceeds authorized limits or constitutes an abuse of discretion. *Marks v. Vehlow, supra; Levan v. Richards, supra.*

■ One caveat should be observed. Contempt orders frequently result from the refusal of the contemnor to obey the express order of a court. As we have explained, the contemnor may challenge the procedure by which the contempt is adjudicated. He may argue that there is no substantial evidence to support the finding that he knowingly violated a court order. He may even challenge the penalties imposed. However, he may not knowingly ignore an order of the court, even though he believes it to be incorrect, and then contest the validity of the underlying order on appeal from a finding of criminal contempt.[3] *See Barnett v. Reed, supra; Ma-*

*thison v. Felton, supra.* This rule is based upon sound foundations of public policy. A trial court may make numerous rulings and issue a substantial number of orders during the course of a lawsuit. If a party were free to disobey any order with which he or she disagreed, the entire judicial process would break down. As the United States Supreme Court explained in *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975):

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.... Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. [Citations omitted.] But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders.... Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice.

419 U.S. at 458–60, 95 S.Ct. at 591–92. *See also Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210

3. The United States Supreme Court has stated that, because a proceeding for *civil* contempt is remedial in nature, there can be no liability for civil contempt if the order violated is ultimately judged erroneous. *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Because the contempt in this case was criminal, we need not decide the issue.

(1967); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922). This rule applies even where the order later is found to have infringed upon constitutional rights or to be based upon an unconstitutional statute. *Walker v. City of Birmingham, supra; Gov't of Canal Zone v. Gonzalez T.,* 607 F.2d 120 (5th Cir.1979); *United Marine Div. of International Longshoremen's Ass'n v. Commonwealth,* 193 Va. 773, 71 S.E.2d 159 (Va.), *cert. denied,* 344 U.S. 893, 73 S.Ct. 212, 97 L.Ed. 690 (1952). Only in the case where an order was "transparently invalid or had only a frivolous pretense to validity" will a criminal contempt finding be reversed.[4] *Walker v. City of Birmingham,* 388 U.S. at 315, 87 S.Ct. at 1829; *United States v. United Mine Workers, supra; United Mine Workers of America Union Hospital v. United Mine Workers of America District No. 50,* 52 Ill.2d 496, 288 N.E.2d 455 (1972). We believe that this is a heavy burden to meet, and that an individual who disobeys an order of the court acts at his peril. Unless he can convince the appellate court that the order was so clearly invalid that no reasonable man could believe otherwise, a criminal contempt order will be upheld.[5] We further consider it incumbent upon the individual to bring the error to the attention of the court before undertaking to disobey the order. *See Walker v. City of Birmingham, supra. See generally Cox, supra.*

Reeves urges that I.C. § 1–1901(2) requires a contrary conclusion. The statute provides that "[e]very judicial officer has power ... [t]o compel obedience to his lawful orders...." Reeves asserts that an erroneous order is not "lawful" and need not be obeyed. It has been said that the contempt power is inherent in the judicial office, and although it may be regulated by the Legislature, it may not be abridged. *See McDougall v. Sheridan,* 23 Idaho 191, 128 P. 954 (1913). *Compare State v. Weinberg,* 229 S.C. 286, 92 S.E.2d 842 (1956) *with LaGrange v. State,* 238 Ind. 689, 153 N.E.2d 593 (1958). However, we need not address this issue today. We believe that a court order, issued by the court in good faith and not transparently invalid, should be characterized as "lawful." *See United Marine Div. of International Longshoremen's Ass'n v. Commonwealth, supra.*

## II

We now turn to the substance of Reeves' appeal. In Part A, we will address Reeves' argument that he was entitled to disobey the temporary restraining order because it was invalid. In Part B, we will discuss his claim that procedural irregularities in the institution and conduct of the contempt proceedings require reversal.

## A

■ As stated above, the magistrate in this case entered an *ex parte* order directing the wife to "desist and refrain from interfering with [her husband's] custody" of their child. The order was issued on July 30 and filed August 2. It set a hearing for August 15, at which time the wife was directed "to show cause, if any there be, why this temporary restraining order should not be made permanent." Reeves argues that the order was invalid because it did not satisfy certain requirements of I.R.C.P. 65(b). In particular, he points out that the order was not endorsed with the date and time of issuance, did not contain a finding that irreparable injury would result

---

**4.** We recognize that courts often couch this question in terms of whether the court had "jurisdiction" to enter the order which the contemnor disobeyed. In light of the historical implications of this term, we decline to use it. Nevertheless, one example of a "transparently invalid" order would be an order *obviously* outside the subject matter or personal jurisdiction of the court.

**5.** There is an exception to this rule. The United States Supreme Court has held that, when a witness refuses to answer a question on the grounds that he might incriminate himself, a contempt order based on that refusal will be reversed if it is determined that the privilege was properly asserted. *Maness v. Meyers, supra.* We need not here decide whether this exception obtains in cases where the privilege asserted is grounded in state law. *Cf. Marks v. Vehlow, supra* (involving newspaperman's privilege).

in the absence of immediate action, and failed to state what efforts had been made to give notice to the opposing party. Additionally, Reeves urges that the restraining order was made for a period in excess of fourteen days, in violation both of I.R.C.P. 65(b) and of his due process rights. The magistrate responds that under I.R.C.P. 65(g) [6] orders entered in divorce and related proceedings need not comply with the strict requirements of Rule 65(b). He further contends that no due process violation occurred.

The questions here presented are not susceptible of easy resolution. On the one hand, I.R.C.P. 65(g) stands on its own, and the rule contains no suggestion that it is limited by the protections of Rule 65(b). Rule 65(g) may constitute a recognition that immediate and decisive court action is required in domestic relations cases, which are perhaps unique in the intensity of feeling and potential for conflict they present. Arguably, Reeves' interpretation would render Rule 65(g) mere surplusage. On the other hand, a rule which grants a trial judge carte blanche to enter *ex parte* orders without any protections for absent parties might present constitutional difficulties. Our Supreme Court has suggested in *Overman v. Overman*, 102 Idaho 235, 629 P.2d 127 (1980), that certain 65(b) protections may therefore apply to orders entered under Rule 65(g).

We need not resolve these issues today. As stated above, an individual may not generally ignore a court order with which he disagrees. Rather, he should draw the trial court's attention to the alleged error. If his objections are overruled, he should seek certification of the issue under I.R. C.P. 54(b) or otherwise pursue an orderly appeal. Here, Reeves did not make his objections known to the magistrate before telling his client what to do. From the record before us, Reeves simply decided the order was invalid and directed his client to ignore it. While the validity of the order

is a close issue, we believe the order was not so lacking in merit as to be "transparently invalid." Therefore, we hold that Reeves may not attack the contempt order on the ground of alleged invalidity. *Cf. Pennsylvania Railroad Co., v. Transport Workers Union of America,* 278 F.2d 693 (3d Cir.1960).

**B**

Reeves' next line of attack relates to the sufficiency of the affidavits supporting the motion for an order of contempt. He asserts that the affidavits do not adequately allege that he was served with the temporary restraining order. He argues that the affidavits do not state that the wife's actions were designed to interfere with her husband's custody of the child. Finally he contends that, because one of the affidavits was not filed until the day before the contempt hearing, the contempt order should be reversed.

Under the Idaho Code, contempts are of two classes—direct contempts, which occur in the immediate presence of the court, and indirect contempts, which occur outside the presence of the court. *Jones v. Jones, supra;* I.C.R. 42. Reeves' conduct in this case was indirect contempt. Idaho Code § 7–603 provides that in such cases "an affidavit shall be presented to the court or judge of the facts constituting the contempt...." *See also* I.C.R. 42(b). In such a case, the affidavit constitutes the complaint. Its function is to apprise the alleged contemnor of the particular facts of which he is accused, so that he may meet such accusations at the hearing. *Bandelin v. Quinlan, supra; Jones v. Jones, supra.* Where the affidavit fails to allege all essential material facts, the deficiency cannot be cured by proof supplied at the hearing. *First Security Bank of Idaho, N.A. v. Hansen, supra; Jones v. Jones, supra.*

In this case, two affidavits were filed and served upon Reeves, together with the mo-

---

**6.** Rule 65(g) succinctly states: "In suits for divorce, annulment, alimony, separate maintenance or custody of children, the court may make prohibitive or mandatory orders, with or without notice- or bond as may be just."

tion for order of contempt, more than a month before the hearing was conducted. A third affidavit by the wife was not served until the day before the hearing. Reeves contends that the third affidavit, upon which the magistrate relied in his finding of contempt, should not have been considered. He urges us to apply I.R.C.P. 6(d), which provides that a written motion and notice of hearing must be served not less than five days before the hearing, and that, when the motion is supported by affidavit, the affidavit shall be served with the motion.

■■■■■ We agree that, in the context of a contempt hearing, the affidavits constituting the complaint should be served at least five days before the hearing. This provides the accused with a proper opportunity to prepare his defense. *Bandelin v. Quinlan, supra.* Consequently, we will not consider the third affidavit in determining whether Reeves had sufficient notice of the particular facts constituting the contempt. However, the magistrate did not err in considering the third affidavit at the hearing. So long as the initiating affidavits sufficiently alleged the essential material facts constituting the contempt, the magistrate could consider further evidence at the hearing, either by way of live testimony or by affidavit.

■■■ Reeves asserts two deficiencies in the initiating affidavits. First, he contends that they do not adequately allege that "the contemnor ... was served with the order which he is charged as having violated ... or that he had actual knowledge of it." *First Security Bank, N.A. v. Hansen, supra; Jones v. Jones, supra.* We disagree. The initiating affidavit sworn by the husband stated "[t]hat said Reginald Reeves, attorney of record for [the wife] ... was served a copy of the Restraining order on the 30th day of July, 1984 ... as shown by the files and records of this court." Reeves apparently complains that the husband did not have personal knowledge of service. Assuming this to be true, we consider it inapposite. The affidavit gives Reeves clear notice that service of the order upon Reeves was alleged. A certificate showing service upon Reeves was in the record. At the hearing, the magistrate was entitled to confirm, by means of his personal knowledge, that Reeves had actual notice.

Second, Reeves contends that the initiating affidavits do not adequately allege that the wife took actions with the intent to interfere with her husband's custody of the child. One of the affidavits stated:

That on the 10th day of August, 1985, plaintiff ... took ... the minor child of the parties hereto, from the Quality Time Day Care Center, without affiant's permission or previous knowledge or consent, and in violation of said Temporary Restraining Order, and refused to obey said Restraining Order and further refused to return said child to the care and custody of defendant....

We fail to discern how the affidavit could have been made more specific. Reeves' contention is totally without merit. We conclude that the initiating affidavits were sufficient.[7]

Reeves asserts that the magistrate denied him the opportunity to speak in his own defense. We first note that the magistrate entered the contempt order without testimony or argument by Reeves only because Reeves twice failed to appear at scheduled hearings. Reeves asserts that, because he no longer represented the wife, he did not realize that his attendance was required. Taking his assertion as true, we do not believe that it was reasonable. Three times Reeves was served with a notice of hearing. The first notice was ad-

---

7. One argument that Reeves failed to make is worthy of remark. Reeves did not directly interfere with the husband's custody of the child. Rather, he instructed the wife to do so. It has been held that, in appropriate circumstances, an attorney may be held in contempt for instructing his client to violate a court order. *Maness v. Meyers, supra.* However, there is some concern that the widespread issuance of contempt orders against attorneys for giving good faith advice to their clients would have a chilling effect on the attorney-client relationship. *Id.* This issue has not been argued, and our decision today should not be considered a statement regarding it.

dressed both to Reeves and to his client, and accompanied a motion seeking to find the wife "and/or" Reeves in contempt. The second and third notices were addressed specifically to Reeves. As a licensed attorney, Reeves should have been aware of the significance of a motion for order of contempt. If he had any doubt whether to attend, a timely inquiry to the court could have dispelled that doubt. We further note that the magistrate subsequently conducted a hearing on Reeves' "Motion to Reconsider." Reeves' attorney argued the cause and cross-examined the opposing affiants. While Reeves claims that the magistrate denied him a full evidentiary hearing on his motion, we note that Reeves' affidavit in support of the motion did not deny any of the facts upon which the contempt determination was based. Nor do we find anything in the record to indicate that Reeves contests those facts. Because Reeves did not request that a transcript of the reconsideration hearing be provided to this Court, we cannot tell whether Reeves was denied the opportunity to testify at that hearing or even whether he requested to do so. We are mindful that I.C. § 7–609 gives an alleged contemnor the opportunity for a hearing and to examine witnesses. However, on the record before us, we cannot say that Reeves' right was violated in this case.

Finally, Reeves argues his belief that the order gave his client the option to obey *or* to show cause why the order should not be enforced. This argument is disingenuous. The language of the order is unequivocal:

> IT IS HEREBY ORDERED that [the wife], until the further order of this court, desist and refrain from interfering with [the husband's] custody of ... the minor child.... You may appear ... on the 15th day of August, 1984, and show cause, if any there be, why this Temporary Restraining Order should not be made permanent.

Even the most cursory reading of this order leads to the unmistakable conclusion that it was meant to be obeyed.

In summary, the order in this case was not so transparently invalid that Reeves was entitled to disregard it with impunity. The affidavits supporting the motion for an order of contempt were sufficient to give Reeves notice of the essential facts constituting the contempt, and the procedures followed by the magistrate were adequate. Accordingly, the order of contempt is affirmed. Costs to the respondent, Honorable Jerry D. Reynolds. No attorney fees are awarded.

WALTERS, C.J., and BURNETT, J., concur.