George BOGGS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1–1077 A 235.

Court of Appeals of Indiana, First District.

March 19, 1979.

James M. Backmeyer, William C. Hoelscher, Richmond, for appellant.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

LYBROOK, Presiding Judge.

Defendant-appellant George Boggs brings this appeal from his conviction of contempt of court for which he was fined $300 by the Union Circuit Court. Boggs seeks our review of the following issues:

(1) Whether the defendant's actions constituted direct contempt of court.

(2) Whether the trial court complied with the procedural requirements of Ind. Code 34–4–7–1 *et seq.* for trying an action dealing with contempt.

(3) Whether the trial court afforded the defendant due process of law.

The facts show that on April 11, 1977, the defendant appellant's son was being arraigned in the Union Circuit Court on a charge of aggravated assault and battery which was brought by way of a grand jury indictment. In the course of the proceedings, the trial court asked if the elder Boggs was present, and upon receiving an affirmative response, requested that the elder Boggs come forward. The trial court then administered the oath to George Boggs, and began questioning him concerning statements attributed to Boggs which appeared in area newspapers. The statements made after the grand jury had been discharged, including letters to reporters, were allegedly made by Boggs following the indictment of his son by the Union County grand jury. The statements which were highly critical of the indictment, alleged that the action was "politically motivated" and aimed at the elder Boggs, not his son.

During the questioning, the trial court allowed Boggs to respond only with "yes" or "no" answers and permitted no explanation by Boggs. Boggs received no notice or prior warning of the trial court's intent to question him during his son's arraignment, nor was Boggs represented by counsel.

Boggs was found guilty by the trial court of making three contemptuous statements. The court issued the following order:

"BE IT REMEMBERED that on this 11th day of April, 1977 one George Boggs, Sheriff of Union County, Indiana stated in open Court, under oath, and in the presence of this Court and his counsel, James M. Backmeyer, and David A. Federico, Prosecuting Attorney of this County, that the indictment of his son, Randy Boggs, by the Union County Grand Jury on March 24, 1977 was politically motivated and inspired; that in open Court on this date, under oath, he reaffirmed the statements he made to Mike Agin, a reporter for the Cincinnati Enquirer, a daily newspaper of general circulation in Union and other adjoining counties in the State of Indiana, to the effect that said indictment of his son herein was politically motivated; that he also gave statements to The Liberty Herald, a weekly newspaper of general circulation in Union County, Indiana and to The Indianapolis Star, a daily newspaper of general circulation in Union and adjoining counties in the State of Indiana; that said Sheriff's statements to said newspapers were published in The Cincinnati Enquirer on Tuesday, March 29, 1977; in The Liberty Herald on Tuesday, April 7, 1977; and in The Indianapolis Star on Friday, April 8, 1977.

The said Mike Agin, reporter for The Cincinnati Enquirer, stated in open Court that the Sheriff's statements to him concerning this case as printed and circulated in and by The Cincinnati Enquirer were accurate. The headline of said Cincinnati Enquirer is as follows: 'Son's Indictment Political, Says Boggs.'

A copy of said Cincinnati Enquirer article is hereby made a part of and accepted in evidence herein and marked Exhibit A. A copy of said Liberty Herald article is hereby made a part of and accepted in evidence herein and marked Exhibit B. A copy of said Indianapolis Star article is hereby made a part of and accepted in evidence herein and marked Exhibit C.

The Court further finds that the article in The Liberty Herald appears as a form of a letter purportedly mailed to a reporter, Mike Wiggans, on the staff of The Cincinnati Enquirer; however, the Court finds that no such reporter by that name is connected in any way with said Cincinnati Enquirer and that Sheriff Boggs talked only to reporter Mike Agin.

In view of the numerous statements and articles given by said Sheriff Boggs concerning a felony case now pending in this Court, and in view of the fact that the said Sheriff Boggs, during the course of a murder trial in this Court throughout the month of April, 1975, made public statements concerning that case which were very detrimental to the parties and to the conduct of the trial, for which he was firmly admonished by the Court in and out of chambers, the Court now finds that the said Sheriff Boggs is in contempt of this Court; that on three (3) or more separate occasions he was contemptuous of this Court, and particularly of the action of the Grand Jury of this Court in indicting his said son, Randy Boggs; that to purge himself of said contempts the Court should now fine the said George Boggs One Hundred Dollars ($100.00) on each of said three (3) contempts above referred to which he repeated in open Court on this date.

The Court further finds that in open Court on this date the said Randy Boggs and his said Counsel, James M. Backmeyer, affirmed in their Motion for Change of Venue from Union County (in State of Indiana vs. Randy Boggs, Cause No. 3044) that the great amount of publicity, in said Randy Boggs' case made it impossible for him to get a fair trial in Union or adjoining counties; that Randy Boggs and his counsel agreed that said cause shall be venued to Henry County, Indi-

ana. This Court forthwith ordered said Randy Boggs' case vanued to Henry County. Copies of said Motion for Change of Venue and the Order granting said change are attached hereto and made a part of this order and marked Exhibits D and E respectively.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that the said Sheriff, George Boggs, be, and he hereby is, fined One Hundred Dollars ($100.00) for each of the three (3) contemptuous statements made by him, publicly and in this Court, and publicly in said three newspapers, all as set out above in the findings herein, concerning the actions of the Union County Grand Jury in indicting his son, Randy Boggs, because of political motivations, making fines herein totaling the sum of Three Hundred Dollars ($300.00).

And comes now the said Sheriff, George Boggs, and by way of purging himself of said contempts above referred to in this order, now pays to the Clerk of this Court the sum of Three Hundred Dollars ($300.00).

ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED BY THE COURT.

Dated this 11th day of April, 1977. /s/ James S. Shepard, Judge of the Union Circuit Court."

Boggs first alleges that the trial court erred in holding that the statements made by him at the arraignment of his son on April 11, 1977, constituted direct contempt of court and that the trial court also erred in holding that Boggs' statements to several area newspapers were contemptuous of both the trial court and its grand jury.

Direct contempt is defined by Ind. Code 34–4–7–1 and 34–4–7–2 which state:

34–4–7–1: "Every person who shall, by the commission of any felony, misdemeanor, or other unlawful act; or who by talking, moving about, or by signs, or gestures, or in any other manner, in any court of record, while the same is open for the transaction of business, and engaged therein, create any noise or confusion therein, whereby the business and proceedings of said court shall be disturbed, shall be deemed to be guilty of a direct contempt of said court."

34–4–7–2: "Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceeding thereof, shall be deemed guilty of a direct contempt thereof."

In the case of *LaGrange v. State* (1958), 238 Ind. 689, 153 N.E.2d 593, the Indiana Supreme Court further defined both direct and indirect (or constructive) contempt, saying:

"Direct contempt, as defined in §§ 3–901 [34–4–7–1] and 3–902 [34–4–7–2], *supra*, in general, means conduct directly interfering with court proceedings while court is in session, including creation of noise or confusion, disrespectful conduct and refusing to take the witness stand in a trial. *It has been stated in the cases defining such contempt that such conduct must take place in or immediately adjacent to the courtroom and while court is in session, so that the judge has personal knowledge of such conduct in his official capacity.* . . .

However, in other cases courts have held that, under the inherent power theory the above statutory definitions of contempt are not so all-inclusive as to exclude other acts or conduct which may constitute contempt. For example, contemptuous statements in pleadings or official reports filed in court but not read in open court have also been held by this court to constitute direct contempt as analogous to oral statements made in open court. . . . Also it has been held that an assault upon a judge by a litigant, away from the court, after the judge refused to discuss the case with him, constituted direct contempt. . .

In each instance the misconduct was within the personal knowledge of the judge and was directly applied or communicated to him in a manner different than the general public. Indirect contempt on the other hand is generally characterized by the act as disobeying process (§ 3–903, supra) [34–4–7–3], resisting process or intimidating a witness out of the presence of the court (§ 3–904, supra), [34–4–7–4] or making any false or grossly inaccurate report of any proceeding while the same is pending before the court. (§ 3–905, supra) [34–4–7–5]." (Citations by court in LaGrange omitted and emphasis added.)

In LaGrange, supra, the defendant was convicted of direct contempt for statements contained in a radio broadcast made during a criminal case then pending in the LaPorte Circuit Court. The court on appeal held: ". . . apart from the case of Dale v. State supra [(1926) 198 Ind. 110, 150 N.E. 781], to our knowledge every Indiana case, in which the publication of a newspaper report or comment was charged as constituting contempt, the contempt has been treated as indirect or constructive, and the action has followed the procedure of verified information, rule to show cause and answer. . . ." (Citations of court in LaGrange omitted).

The court in LaGrange then specifically disapproved the Dale case as being "inconsistent" with earlier and later Indiana cases. Of particular import to the court in LaGrange was the fact that the act alleged to be contemptuous took place away from the courtroom, and therefore was not likely to cause physical disturbance of court proceedings nor to coerce or influence the court in making a decision. Clearly, the statements made by Boggs to the various newspapers were not direct contempt under the rule set out by statute and interpreted in LaGrange and the cases cited therein. In addition, there is no evidence in the record that Boggs committed any unlawful act, disturbed the proceedings, refused to testify or testified in such a manner so as to demean himself and/or retard or disturb the court's proceedings on April 11, 1977, when he was cited for direct contempt by the trial court.

In the recent case of Jacobsen v. State (1979), Ind.App., 384 N.E.2d 1041, the appellant was convicted of three counts of contempt of court: (1) making a false affidavit; (2) refusing to answer a proper question on the witness stand; and (3) making scurrilous charges against the judge in papers filed in response to earlier contempt charges. All the charges were determined to be acts of direct contempt under Kerr v. State (1923), 194 Ind. 147, 141 N.E. 308; Coons v. State (1922), 191 Ind. 580, 134 N.E. 194; Matter of May (1976), Ind.App., 358 N.E.2d 138; Ind.Code 34–4–7–2, supra. There, as here, the appellant was a third party to the original proceedings when he was cited for contempt. In Jacobsen, a false affidavit made by the appellant charging the trial judge with misconduct was filed in a pending case. Subsequently, when called to testify concerning the affidavit at a hearing wherein he was directed to show cause why he should not be held in direct contempt for the statements made in his affidavit, Jacobsen refused to answer a proper question directed to him as a witness by the trial court. Finally, the third contempt charge in Jacobsen resulted from the filing in court of a "Verified Return to Contempt Citation" in which Jacobsen charged the trial court with certain improprieties in another wholly unrelated case. All three acts in Jacobsen thus were directed to the trial court either in court or in official papers filed with the court.

In Boggs, the statements complained of were made outside of court, away from the judge and official proceedings. There is no showing that immediate punishment was necessary to maintain order in the court and respect for its authority, as discussed in Jacobsen, supra. See Brennan v. State (1961), 242 Ind. 79, 173 N.E.2d 312; and LaGrange v. State, supra.

Further, we find that contrary to the statement contained in the Citation and Order of Contempt, the record shows that Boggs was not permitted to make any comments in court, but was ordered to answer

only affirmatively or negatively as to whether he had made the previous remarks quoted in the newspapers to which the trial court took offense. Under oath, Boggs was placed in the untenable position of being forced to: (1) acknowledge his previous remarks without explanation or defense, thereupon being cited for direct contempt; (2) perjure himself by denying the same; or, (3) refuse to answer the court's query thus risking further contempt action under Ind. Code 34–4–7–2, cited above. Such inquisitorial conduct on the part of the trial court does not further the ends of justice and will not be sanctioned by this court.

It follows from the foregoing discussion that the charge against defendant-appellant Boggs should have been treated as an action for indirect contempt and tried accordingly.

■ The Indiana Code defines indirect contempt under 34–4–7–3, 34–4–7–4 and 34–4–7–5 and provides the procedures to be followed in bringing an action for indirect contempt under 34–4–7–8, 34–4–7–9, 34–4–7–10, including provisions for the selection of a special judge to hear the alleged contempt under 34–4–8–1.

In this case, Boggs was not accorded the protection guaranteed by the above statutes. He was never presented with a rule of the trial court clearly setting forth the facts allegedly constituting the contempt for which he was found guilty, nor was he informed of the nature and circumstances of the charge against him or the time and place at which he was required to answer the charges by showing cause in court why he should not be attached or punished for such contempt, prior to being called forward in open court at the arraignment of his son. No information was ever filed with the trial court as required, nor was defendant-appellant Boggs given a reasonable and just opportunity to purge himself of such contempt. Likewise, there is no evidence that the trial court nominated a panel from which a special judge should have been named to hear the action against Boggs.[1]

In the case of *Garlin v. State* (1975), 163 Ind.App. 570, 325 N.E.2d 515, this court reversed a conviction of contempt where the procedure followed by the trial court violated basic procedural due process requirements in failing to require the filing of a verified information, in failing to serve upon the defendant a rule to show cause, and in failing to grant a change of judge.

In addressing the question of what "due process of law" encompasses in criminal contempt proceedings, we think the language of the United States Supreme Court in the case of *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, which we set out in *Garlin, supra,* warrant repeating:

"Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case [*Cooke v. United States* (1925), 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767] requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. *The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public.* If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out." (Footnote by court in *Garlin* omitted and emphasis added.)

---

1. In light of these factors, we need not address the issue, argued by Boggs, of whether the elder Boggs was represented by counsel at the arraignment.

The United States Supreme Court also held that due process requires that a judge other than the one reviled by the contemnor conduct the accused's trial. *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 91 S.Ct. 499, 277 L.Ed. 532; *In re Oliver, supra.*

Indiana has followed this line of authority in *McIntire v. State* (1967), 248 Ind. 142, 223 N.E.2d 347; *Allison v. State* (1963), 243 Ind. 489, 187 N.E.2d 565; *Garlin v. State, supra.*

The evidence before us fails to show that Boggs was guilty of direct contempt of the Union Circuit Court under Ind.Code 34–4–7–1 and 34–4–7–2. In addition, we find that the conviction cannot be sustained as one for indirect criminal contempt where there has been a failure to meet the statutory procedural requirements which would accord Boggs due process of law. Therefore, the judgment herein is reversed.

Reversed.

LOWDERMILK and ROBERTSON, JJ., concur.