**Mary Jo (Wolf) MALICOAT, Appellant–Petitioner,**

v.

**Donald WOLF, Appellee–Respondent.**

**No. 82A05–0301–CV–29.**

Court of Appeals of Indiana.

July 29, 2003.

---

Donald R. Vowels, Keating, Bumb, Vowels, LaPlante & Kent, P.C., Evansville, IN, Attorney for Appellant.

Donald J. Wolf, Appellee Pro Se.

## OPINION

MAY, Judge.

Mary Jo Malicoat ("Mother") appeals from a finding of contempt of court and a partial denial of her petition to modify visitation. She presents three issues for review, which we consolidate and restate as: 1) whether the trial court abused its discretion in determining she was in contempt of court; and 2) whether the trial court abused its discretion in denying, in part, her petition to modify visitation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Donald Wolf ("Father") were divorced on June 15, 1995. The terms of their divorce included joint custody of their two minor children, C.A. and M.J. As modified in May 1997, the custody arrangement provides in part that Mother is the primary physical custodian of the children; Mother shall provide Father with a schedule of the children's extracurricular activities; Father has visitation and temporary custody of the children every other weekend from 4 p.m. Friday to 6 p.m. Sunday and at other times as Mother and Father agree; Father has additional visitation one night a week during the summer; and Father has additional visitation of one full week in June, July and August.

In early March 2002, Father arrived at Mother's house between 5 p.m. and 6 p.m. on Friday to pick up C.A. and M.J. for his weekend. Although Father had called and told [Mother] that he was coming then, Mother, C.A., and M.J. were not there, because they had gone shopping for new shoes. (Tr. at 7.) Father returned later, but C.A. and M.J. were not there.

Father filed a Verified Information For Contempt on March 27, 2002, alleging Mother "failed to make the children avail-able for visitation as ordered" and failed to inform Father of the children's activities. (App. at 7.) Mother filed a Petition to Modify visitation on April 5, 2002, stating the present visitation schedule was unreasonable due to the children's school and athletic activities and requesting "an open-ended visitation giving the boys in-put [sic] as to the visitation schedule." (*Id.* at 9.) C.A. and M.J. began counseling with a therapist on April 16, 2002. Father was not notified about the counseling.

In late May 2002, C.A., M.J., Father, and Father's wife met at a restaurant for a meal. Father's wife "started in" on the children regarding visitation and how they were "mistreating their dad," which caused the children to be upset, embarrassed and unable to eat. (Tr. at 33.) The children were also questioned about their counseling, which the children wanted to be private.

C.A. and M.J. did not participate in scheduled visitation with Father after this incident. Father called C.A. and M.J. several times; his calls were not always returned. On September 29, 2002, Father told C.A. and M.J. he was not going to "call and bug [them] anymore" because Father believed the children did not "want to participate and call [him] back." (*Id.* at 16.)

A hearing on the information for contempt and the petition to modify was held on November 19, 2002. The trial court found Mother "in contempt with no sentence at this time" and "granted in part" Mother's petition to modify by requiring Father to "provide the necessary transportation for [C.A. and M.J.] to attend scheduled school activities during [Father's] visitation." (App. at 11.)

## DISCUSSION AND DECISION

1. *Contempt of court*

Mother argues that because she was "justifiably concerned" about C.A.'s

and M.J.'s well being and "reluctance to be with [Father]," the trial court abused its discretion in finding her in contempt. (Br. of Appellant at 9.)

Whether a party is in contempt is a matter left to the sound discretion of the trial court. *Piercey v. Piercey,* 727 N.E.2d 26, 31 (Ind.Ct.App.2000). We reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Id.* at 31–32.

Father filed the information for contempt after Mother made C.A. and M.J. unavailable for visitation in early March.[1] Mother testified C.A. and M.J. did not want to go to Father's house that weekend due to their prior plans and to prior altercations with Father. Mother, Father, C.A., and M.J. had engaged in a "five hour hollering match on the phone" on Thursday about whether the children would spend the weekend with Father. (Tr. at 27.) Mother testified C.A.'s and M.J.'s understanding was "they were not going" to Father's while "[F]ather's understanding was he was going to force them no matter what." (*Id.* at 31.) At the hearing in November, Father testified he had not seen C.A. and M.J. since May and had not spoken to them since the end of September.

To be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. *Piercey,* 727 N.E.2d at 32. To hold a party in contempt for a violation of a court order, the trial court must find the party acted with willful disobedience. *Id.* Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt. *Crowl v. Berryhill,* 678 N.E.2d 828, 830 (Ind.Ct.App.1997).

The visitation order provided that Father would have custody of the children from 4 p.m. Friday until 6 p.m. Sunday every other weekend and for one full week during June, July and August. Mother was aware of the visitation order. Although it was Father's weekend to have the children, Mother made the children unavailable because they did not want to go to Father's for the weekend. Mother does not appear to deny making the children unavailable but seeks instead to justify her actions by citing her "concern about their well-being" (Br. of Appellant at 9) and her "[correct] consideration of the best interests of the children." (*Id.* at 10.)

Indiana Parenting Time Guideline I.E.3 provides this admonition to parents when a child does not want to participate in scheduled visitation: "If a child is reluctant to participate in parenting time, each parent shall be responsible to ensure the child complies with the scheduled parenting time. *In no event shall a child be allowed to make the decision on whether scheduled parenting time takes place.*" (Emphasis supplied.)

---

1. Father also alleged he was not kept informed of the children's activities as required by the custody order. Mother submitted evidence that Father received activity schedules directly from C.A.'s school. Because we affirm the trial court's finding of contempt based upon Mother's failure to make the children available for visitation, we need not determine whether schedules sent from the school satisfied the requirement that Mother keep Father informed of activities.

If Mother believed C.A. and M.J. were being harmed by the scheduled visitation with Father, "her remedy was to seek a modification of the [visitation] order." *Hartzell v. Norman T.L.*, 629 N.E.2d 1292, 1295 (Ind.Ct.App.1994). "Instead, she defied the visitation order." *Id.; see also Piercey*, 727 N.E.2d at 32 n. 2. Mother acted with willful disobedience in making the children unavailable for visitation with Father. The trial court's finding of contempt is affirmed.[2] *See, e.g., Piercey*, 727 N.E.2d at 32.

### 2. *Petition to modify*

■ Mother petitioned for modification of visitation and argues the trial court's partial denial of this petition was an abuse of discretion. The trial court "granted in part" Mother's petition to modify by requiring Father to "provide the necessary transportation for [C.A. and M.J.] to attend scheduled school activities during [Father's] visitation."[3] (App. at 11.) Mother does not argue the trial court's

modification was improper but suggests the age and maturity of the children, coupled with the problems they are having with Father, command open visitation with the children having input.

■ In order to prevail on a petition to modify visitation Mother must show that a modification would be in the best interests of the children and must show a change in circumstances since the decree in effect was issued. *Beeson v. Christian*, 583 N.E.2d 783, 788 (Ind.Ct.App.1991). A court's order concerning visitation will be reversed only upon a showing of manifest abuse of discretion, that is, when the trial court's decision is clearly against the logic and the facts of the case. *Id.*

In order to modify a visitation or child custody order, the trial court must determine the modification is in the best interests of the child and that there has been a substantial change in one of the factors listed in Ind.Code § 31–17–2–8.[4] Ind.Code § 31–17–2–21. Mother's petition to modify specified the substantial change in circum-

---

**2.** Mother also argues the trial court abused its discretion by preventing Mother from testifying about the statements made to her by the children about the incident in the restaurant. The magistrate, raising the issue *sua sponte*, found the statements were hearsay. Mother argues here that her testimony was offered as evidence of her state of mind and was thus admissible. *See* Ind. Evid. R. 803(3). Counsel did not proffer this argument at the hearing, however, and thus waived this issue on appeal. Furthermore, Mother's state of mind in late May cannot be offered as justification for her actions in early March, which actions form the basis of the information for contempt. The trial court did not abuse its discretion.

**3.** This modification comports with Indiana Parenting Time Guideline II.C.2 which states: "In exercising parenting time with a teenager, the non-custodial parent shall make reasonable efforts to accommodate a teenager's participation in his or her regular academic, extracurricular and social activities."

**4.** These factors include:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
  (A) the child's parent or parents;
  (B) the child's sibling; and
  (C) any other person who may significantly affect the child's best interests
(5) The child's adjustment to the child's:
  (A) home;
  (B) school; and
  (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian[.]
Ind.Code § 31–17–2–8.

stances as the children being "at an age at which the present visitation schedule has become unreasonable due to their school and athletic activities." (App. at 9.) The petition also noted the children's unwillingness to visit with Father.

At the hearing, Mother testified about several problems between Father and children. The children were "always being called liars" and "deadbeats" while with Father. (Tr. at 32.) Father told the children "they have to call him for permission to do anything" regardless of whether they were with Father or Mother. (*Id.* at 30.) Mother also testified that after Father's September 29 phone call, the children were "happy [and] relieved" to learn they were not going to have any contact with Father anymore. (*Id.* at 39.)

The children's therapist, Linda Roth, testified the children appeared to have a stress reaction that was attributable to visitation with their father. The children's goal in counseling was "to handle their stress better so they could visit their father." (*Id.* at 46.) The children told Roth they were accused of lying about activities being scheduled so they could avoid Father. Roth described the children as "very mature, very responsible, very respectful, [and] overly responsible." (*Id.* at 47.) Roth stated there was a lot of "pain and hurt and confusion from the boys to have such a marked relief from a father they love saying I'm not going to bother you anymore." (*Id.* at 54.)

Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by non-custodial parents. *Hanson v. Spolnik*, 685 N.E.2d 71, 79, (Ind.Ct.App.1997), *trans. denied.* Although the right of visitation is subordinated to the best interests of the child, a non-custodial parent is generally entitled to reasonable visitation rights. *Id.* Furthermore, the Indiana Par-

enting Time Guidelines are based on the premise that it is usually in a child's best interests to have frequent, meaningful and continuing contact with each parent. Indiana Parenting Time Guidelines, Preamble. "It is assumed that both parents nurture their children in important ways, significant to the development and well being of the child." *Id.*

Although the circumstances have changed as a result of C.A. and M.J. becoming teenagers and participating in extracurricular activities, the trial court did not abuse its discretion in denying Mother's petition for open visitation. Granting Mother's petition for open visitation, under these circumstances, could deprive Father of reasonable visitation rights and deprive C.A. and M.J. of meaningful interaction with Father, contrary to the objectives of the Indiana Parenting Time Guidelines and the best interests of C.A. and M.J.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.