Kristin Lynn PRYOR, Appellant–Petitioner,

v.

David Eric BOSTWICK, Appellee–Respondent.

No. 49A02–0402–JV–127.

Court of Appeals of Indiana.

Oct. 26, 2004.

Publication Ordered Nov. 16, 2004.

Lilaberdia Batties, Batties & Associates, Indianapolis, IN, Attorney for Appellant.

Jerald L. Miller, Bowman, Ksenak & Miller, Indianapolis, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Kristin Lynn Pryor ("Mother") appeals from two of the trial court's orders finding her in contempt of court and calculating David Eric Bostwick's ("Father") child support obligation with respect to their child, A.B. She presents the following issues for our review:

1. Whether the trial court erred when it found Mother in indirect contempt of court for failing to comply with a visitation order.

2. Whether the trial court abused its discretion when it ordered Father to pay $30 per week in child support.

3. Whether the trial court erred when it found Mother in direct contempt of court.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Father had an affair with Mother in early 2002, and Mother gave birth to the parties' child, A.B., on December 3, 2002. On July 9, 2003, Mother filed with the trial court a petition to establish Father's paternity and a motion requesting temporary custody, child support, and attorney's fees. On October 27, 2003, the parties submitted an agreed entry, and the court approved that entry the same day. The terms of the agreed entry provided in part that once paternity was established by a pending DNA test, the parties would submit an agreed paternity order establishing custody, visitation, and child support.[1] The results of the DNA test establishing Father's paternity were sent to the parties on November 5, 2003. But, contrary to the terms of their agreed entry, the parties did not submit an agreed paternity order to the trial court thereafter.

On November 21, 2003, Father filed a verified motion for rule to show cause, which stated in relevant part as follows:

1. That this Court entered an Agreed Court Entry on the 27th day of October, 2003, which, among other things, established that in the event that the Respondent, [Father] proved to be the biological father of said [A.B.], pursuant to the results of a DNA paternity test, that . . . [Father] shall have visitation with said minor child pursuant to the

---

1. The agreed entry specifies that once paternity is established, Father would have visitation with A.B. pursuant to the Parenting Time Guidelines, but that visitation, child support, and custody would be established "pursuant to an agreement between the parties." Appellant's App. at 419.

Indiana Parenting Time Guidelines currently in effect in the State of Indiana after an acquaintance period is established for parenting time for the first forty[-]five (45) days of parenting time; and that within five (5) days of receiving the results of said DNA paternity test, the parties would submit an Agreed Paternity Order to the Court.

\* \* \*

3. That as a result [of the DNA test establishing Father's paternity], [Father] has admitted paternity to the Petitioner, [Mother], and said Petitioner, [Mother], has acquiesced to the Respondent that he is in fact the biological father of said minor child.

4. That the Petitioner, [Mother], is in contempt of this Court for her refusal to comply with said Agreed Court Entry inasmuch as she refuses to allow the Respondent, [Father], extended opportunities to develop an acquaintance period during said forty[-]five (45) days acquaintance period set out in said Agreed Court Entry; ... and that if the Respondent did not like that, he should take her to Court, or words to that effect.

5. That the parties have attempted to reach an Agreed Paternity Order since the issuance of [the paternity test results], to no avail, and it appears that what is being discussed between the parties, relative to such possible agreement, and what is being discussed between the attorneys, relative to same, is not the same information, which has frustrated the ability of the parties to reach such an agreement.

\* \* \*

7. That the Respondent, [Father], verily believes that the Petitioner, [Mother], will continue to frustrate his efforts to reacquaint with said minor child, during said forty[-]five (45) day acquaintance period heretofore set out in the Court's Order of October 27, 2003, aforesaid, ... until the Court issues its order in its hearing [regarding all pending issues]....

\* \* \*

WHEREFORE, the Respondent, [Father], prays this Honorable Court that the Petitioner, [Mother], be ordered to appear and show cause why she should not be held in contempt of this Honorable Court for failure to comply with the Orders of this Court as hereinabove set out....

Appellant's App. at 421–24.

Following a hearing on Father's motion on January 12, 2004, the trial court entered an order which provided in relevant part as follows:

(1) Paternity is established retroactive to November 10, 2004, pursuant to the Agreed Entry executed by both parties and approved by this court on October 27, 2003.

(2) The minor child's name is hereby changed to [A.] Bostwick, pursuant to the Agreed Entry executed by both parties and approved by this court on October 27, 2003.

(3) The court finds Mother in contempt for refusing to allow Father's visitation and orders Mother as a sanction to pay Father's [attorney's] fees of $1,000.00 [within] 90 days from today's date. Mother's actions were willful and deliberate despite the court's order allowing visitation.

(4) Court issues preliminary order of custody to Mother.

(5) [Court] issues [preliminary] Order of support [with] Father to pay $30 per week through the Marion County Clerk's Office weekly; however, urges the parties to do a child support worksheet using the 2004 Guidelines. If agreement can be reached, parties to file agreed entry. Payment begins [Friday], Jan. 26, 2004.

(6) [Court] issues [preliminary] order of visitation. Father to have [visitation] on Sundays from 9:30 a.m. to 7:30 p.m., and each Monday and Wednesday evening from 4:30 p.m. to 7:30 p.m. This schedule is to be followed [weekly]. If Father misses a day of visitation, there will be no make up time. Child to be picked up and dropped off at Bob Evans Restaurant at I–465 and Rockville Road. There will be no overnight visitation until further order; this visitation is unsupervised; and Mother is told her family is not to follow Father around or be around watching Father when [Father] has visitation.

\* \* \*

The court sets the final hearing for May 20, 2004[at] 9:00 a.m. for a full day trial. If the parties are able to agree on some issues, they will notify the court.

Appellant's App. at 6–8.

On January 21, 2004, Father filed a second motion for rule to show cause alleging that Mother was in contempt of the court's order that she change their child's last name to Bostwick. Attached to that motion was a letter Mother had written to Father, wherein Mother stated that she did not intend to change the child's last name to Bostwick and that her attorney told her that "our Dyke chop judge was a stand in because the real judge was gone on maternity leave, what is it they go to a temp service when real judges are gone." *Id.* at 462. Following a hearing on that motion, the trial court entered an order as follows:

(1) ... Mother has now corrected her refusal to change the minor child's name and therefore the court declines to find [Mother] in contempt at this time....

(2) Direct contempt—

Court finds Mother in direct contempt for continued contempt of this court and this court's orders by statements such as f\* \* \* the judge and f\* \* \* this order. Our "dyke chop judge from a temp service which is where they go when real judges are gone." This conduct occurred in the presence of a disinterested witness who testified in this court on January 12, 2004. The letter which was mailed to the father by the mother specifically shows her refusal to abide by the court's orders.... The court was very specific in telling all parties and attorneys at the end of the visitation hearing on January 12, 2004, that the child's name was changed and visitation is to occur. The court finds mother in direct criminal contempt, and orders her committed to the [sic] of name issue. The court was very specific at the hearing on January 12, 2004 with its orders for the name change and visitation. Mother only reacted to the court's order after a [petition] for a rule to show cause was filed by Father. The court therefore finds Mother in direct criminal contempt and orders her committed to the Marion County Jail for 48 hours. Request for stay is denied.

*Id.* at 9–11. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Indirect Contempt

█ Mother first contends that the trial court erred when it found her in indirect

contempt "for refusing to allow Father's visitation" with A.B. prior to January 12, 2004. Appellant's App. at 6. Mother maintains that because paternity had not been established prior to January 12, there could not have been any visitation order in effect. We must agree.

Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Carter v. Johnson*, 745 N.E.2d 237, 240 (Ind.Ct.App.2001) (quoting *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind.1994)). There are two types of contempt, direct and indirect. Acts of indirect contempt are those which undermine the activities of the court but fail to satisfy the requirements to be direct contempt. *Id.* at 241. To be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. *Malicoat v. Wolf*, 792 N.E.2d 89, 92 (Ind.Ct.App.2003). Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt. *Id.*

The parties' agreed entry, which was approved by the court in October 2003, specified that *after* Father's paternity was established by the DNA test, the parties would submit an agreed entry setting out paternity, custody, child support, and visitation. But the parties did not submit an agreed entry after they received the test result, and the trial court did not enter an order establishing paternity until January 12, 2004. The trial court stated that the paternity order was "retroactive to November 10, 2004 pursuant to the Agreed Entry executed by both parties." Appel-

lant's App. at 6. But, while a trial court may make a child support order retroactive, *see, e.g., Haley v. Haley*, 771 N.E.2d 743, 752 (Ind.Ct.App.2002), we know of no basis for making a visitation order retroactive. Until the trial court entered an order establishing Father's paternity, Father did not have any visitation rights. *See* Ind.Code § 31-14-14-1 (visitation rights of noncustodial parent). As such, there was no visitation order in effect until January 12, and Mother could not have violated any such order until after January 12. We hold that the trial court erred when it found Mother in contempt for denying Father visitation with A.B. in its January 12th order.[2] We reverse the trial court's order that Mother pay $1,000 in Father's attorney's fees as a sanction.

### Issue Two: Child Support

Mother next contends that the trial court abused its discretion when it ordered Father to pay $30 per week in child support. Specifically, Mother maintains that the trial court failed to base its order on the Child Support Guidelines, as it was required to do. Again, we must agree.

Decisions regarding child support are generally left to the discretion of the trial court. *Sebastian v. Sebastian*, 798 N.E.2d 224, 227 (Ind.Ct.App.2003). Indiana Child Support Guideline 3(B)(1), Income Verification, provides that a child support worksheet shall be completed and signed by both parties and filed with the court "when the court is asked to order support," including cases in which agreed orders are submitted. *See Dye v. Young*, 655 N.E.2d 549, 550 (Ind.Ct.App.1995).

2. Moreover, from the record, it is unclear whether the trial court followed the procedural requirements in finding indirect contempt. Indiana Code Section 34-47-3-5 provides in relevant part that "[i]n all cases of indirect contempts, the person charged with indirect contempt is entitled: (1) before answering the charge; or (2) being punished for the contempt; to be served with a rule of the court against which the contempt was alleged to have been committed." Our review of the record does not indicate that the trial court issued a rule to show cause prior to the hearing on January 12.

Here, neither party had submitted a child support worksheet to the trial court prior to its order that Father pay $30 per week. Further, the trial court did not enter findings or complete its own child support worksheet to justify its order. *See id.* (holding unable to determine whether trial court complied with child support guidelines because court did not make findings or complete child support worksheet). As such, the trial court abused its discretion when it ordered Father to pay $30 per week in child support in its January 12, 2004 order. The record shows that Mother has since submitted her own child support worksheet, but that Father did not sign it and has not submitted his own worksheet. On remand, we instruct the trial court to obtain a child support worksheet signed by both parties pursuant to Guideline 3(B)(1) and to recalculate Father's child support obligation accordingly.

### Issue Three: Direct Contempt

 Finally, Mother contends that the trial court erred when it found her in direct contempt for alleged negative remarks she made about the trial court and for her alleged noncompliance with some of the court's orders. Specifically, Mother maintains that her conduct did not constitute direct contempt. We agree.

 In reviewing a contempt judgment we will not reweigh evidence or judge credibility of witnesses. *In re the Guardianship of C.M.W.*, 755 N.E.2d 644, 650 (Ind.Ct.App.2001). If the evidence and all reasonable inferences which may be drawn therefrom support the trial court's decision, that decision stands. *Id.*

Indiana Code Section 34–47–2–1 provides as follows:

(a) Every person who disturbs the business and proceedings of a court:

(1) by creating any noise or confusion;

(2) in a court of record; and

(3) while the court is open for and engaged in the transaction of business;

is considered guilty of a direct contempt of court.

(b) This section applies to a disturbance caused:

(1) by the commission of a felony, a misdemeanor, or another unlawful act;

(2) by talking, moving about, or by signs, or gestures; or

(3) in any other manner.

Further, Indiana Code Section 34–47–2–4 provides in relevant part that when a trial court makes a finding of direct contempt, the court "shall distinctly state the act, words, signs, gestures, or other conduct of the defendant that is alleged to constitute the contempt" and the court shall reduce that statement to writing.

 This court has explained that direct criminal contempt involves actions occurring near the court that interfere with the business of the court, and of which the judge has personal knowledge. *C.M.W.,* 755 N.E.2d at 650. In order for contempt to be direct, it must take place in the presence of the court, so that the judge has personal knowledge of it. *Srivastava v. Indianapolis Hebrew Congregation, Inc.,* 779 N.E.2d 52, 60 (Ind.Ct.App.2002), *trans. denied.*

In this case, as we have already noted, the trial court's written entry on this issue states as follows:

Direct contempt—

Court finds Mother in direct contempt for continued contempt of this court and this court's orders by statements such as f* * * the judge and f* * * this order. Our "dyke chop judge from a temp service which is where they go when real judges are gone." This conduct occurred in the presence of a disinterested

witness who testified in this court on January 12, 2004. The letter which was mailed to the father by the mother specifically shows her refusal to abide by the court's orders.... The court was very specific in telling all parties and attorneys at the end of the visitation hearing on January 12, 2004, that the child's name was changed and visitation is to occur. The court finds mother in direct criminal contempt, and orders her committed to the [sic] of name issue. The court was very specific at the hearing on January 12, 2004 with its orders for the name change and visitation. Mother only reacted to the court's order after a [petition] for a rule to show cause was filed by Father. The court therefore finds Mother in direct criminal contempt and orders her committed to the Marion County Jail for 48 hours. Request for stay is denied.

Appellant's App. at 9–11. Nothing in the trial court's statement shows that the trial judge had personal knowledge of the alleged contemptuous conduct or that it occurred near or in the courtroom. The trial court states only that the "conduct occurred in the presence of a disinterested witness." *Id.* The remainder of the trial court's statement refers to Mother's continued noncompliance with court orders, which does not constitute *direct* contempt.[3] We hold that the trial court erred when it found Mother in direct criminal contempt. *See Srivastava*, 779 N.E.2d at 60 (holding no direct contempt where allegedly contemptuous conduct occurred outside of courtroom; party asserting contempt merely made court aware of other party's conduct). Nevertheless, our holding should in no way be construed to suggest

that we condone Mother's disrespectful and contemptuous behavior. We admonish Mother for her conduct during the course of these proceedings, and especially for her personal attack against a judicial officer.

## CONCLUSION

In sum, the trial court erred when it found Mother in indirect contempt for allegedly violating a visitation order before the court had entered an order determining paternity. The trial court abused its discretion when it ordered Father to pay $30 per week in child support without making findings to support that order or completing a child support worksheet. And the trial court erred when it found Mother in direct contempt for her conduct which occurred outside of the courtroom and was not within the trial judge's personal knowledge.

Reversed and remanded with instructions.

SULLIVAN, J., and BARNES, J., concur.

## *ORDER*

This Court having heretofore handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. Comes now the Court, on its own motion, and determines that said Memorandum Decision should now be ordered published.

IT IS THEREFORE ORDERED that this Court's opinion heretofore handed down in this cause on October 26, 2004, marked Memorandum Decision, Not for

---

3. While that conduct might support a finding of indirect contempt, *see* Issue One, our review of the record does not indicate that the procedural requirements necessary for a finding of indirect contempt were followed. *See*

*Boggs v. State*, 179 Ind.App. 607, 386 N.E.2d 992, 997 (1979) (holding evidence insufficient to show direct contempt and no basis for indirect contempt because of failure to meet procedural requirements therefor).

Publication, is now ORDERED PUB-LISHED.

All Panel Judges Concur.