## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 19 2015, 9:29 am
CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Natalie R. Dickey
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Steven Stoesz
Stoesz & Stoesz
Westfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Paternity of D.A. and A.A.:<br><br>Scott Christopher Adkins,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Mendi Marie McQueen,<br><br>*Appellee-Petitioner,* | March 19, 2015<br><br>Court of Appeals Case No.<br>30A04-1407-JP-303<br><br>Consolidated Appeal from the Hancock Circuit Court<br>The Honorable Richard D. Culver, Judge<br>The Honorable R. Scott Kirk, Commissioner<br>Trial Court Cause Nos. 30C01-1403-JP-80 and 30C01-1403-JP-81 |

**Bradford, Judge.**

# Case Summary

[1]     Appellee-Petitioner Mendi Marie McQueen ("Mother") and Appellant-Respondent Scott Christopher Adkins ("Father") (collectively "the parties") have two children together.  On March 13, 2014, Mother initiated two separate

actions to establish the paternity of each child. Father acknowledged paternity of both children, but the parties could not reach an agreement on parenting time or child support. The trial court issued two orders which, among other things, established a parenting time schedule and required Father to pay $128.40 per child per week. Father claims that the trial court erred in its application of the Indiana Child Support Guidelines ("the Guidelines") in four respects: (1) neglecting to enter findings of fact or complete a child support worksheet; (2) calculating a separate support obligation for each child rather than calculating a single support obligation for both children; (3) failing to include Mother's settlement annuity proceeds in its calculation of her weekly gross income; and (4) failing to specify which party is entitled to claim the children for federal and state tax exemption purposes. We reverse and remand with instructions.

## Facts and Procedural History

Before separating in January of 2013, the parties lived together as an unmarried couple for nine years, during which time they had two children together. On March 13, 2014, Mother filed two petitions to establish paternity–one for each child. As a result, two paternity actions were opened under separate cause numbers. On March 27, 2014, Father filed a petition to establish custody, support, and visitation in each action. The parties agreed to consolidate the cases and, on April 18, 2014, the trial court held a hearing on all pending motions. Because the parties had agreed to joint legal custody, the hearing

focused on the issues of parenting time and child support. The majority of the hearing focused on the parties' sources of income and living arrangements.

[3] Father is a union plumber and makes approximately $35.00 per hour. As a union member, Father has occasional, typically brief periods of unemployment ("lay-off periods") during which he receives unemployment benefits in the amount of $390.00 per week. Father's union provides health insurance for the children while he is employed and for a limited period of time during his lay-off periods.

[4] Mother is unemployed but has been receiving monthly structured settlement payments of $6394.25 as a result of being involved in a train accident when she was three years old. Mother's father was also involved in the accident and passed away. Each month, Mother receives $3994.25 for her portion of the settlement, and $2400 for her father's portion. Mother is capable of working but chooses instead to use the settlement money as her means of support. Mother has previously worked at Huntington Bank and Check Smart, making $11.22 and $10.50 per hour, respectively. Mother also receives rental income from a property she leases to her mother.

[5] On May 15, 2014, the trial court issued two separate orders, one under each cause number, which were identical aside from the children's names and birth dates. Each order required Father to pay $128.40 per child per week. Neither order indicated which party was entitled to claim the children for state and federal tax exemption purposes. On May 23, 2014, Father filed a motion to

correct errors requesting that the trial court complete a child support worksheet to explain its calculation of Father's support obligation and otherwise explain or remedy its deviations from the Indiana Child Support Guidelines ("the Guidelines"). A hearing on the motion to correct errors was held on June 6, 2014. On June 9, 2014, the trial court denied Father's motion.

# Discussion and Decision

## I. Standard of Review

[6] Initially, we note that Mother failed to timely file a reply brief.

> When an appellee fails to file a response brief, we need not develop his arguments. *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). "However, this circumstance in no way relieves us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Blunt-Keene v. State*, 708 N.E.2d 17, 19 (Ind. Ct. App. 1999). Rather, we apply a less stringent standard of review in which we may reverse the trial court if the appellant makes a prima facie showing of reversible error. *Id*. "Prima facie in this context is defined as 'at first sight, on first appearance, or on the face of it.' Where an appellant is unable to meet this burden, we will affirm." *Id*. (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985)).

*E & L Rental Equip., Inc. v. Gifford*, 744 N.E.2d 1007, 1009-10 (Ind. Ct. App. 2001).

## II. Child Support Calculation Method

[7] Father claims (1) that the trial court was required to provide a child support worksheet detailing its calculation of Father's child support obligation, (2) that

the trial court was required to make one calculation for both of the children's support, as opposed to two separate calculations for each child individually, and (3) that the trial court should have included Mother's settlement annuity in its calculation of her weekly gross income.

## A. Child Support Worksheet

[8] "Indiana Child Support Guideline 3(B)(1), Income Verification, provides that a child support worksheet shall be completed and signed by both parties and filed with the court 'when the court is asked to order support'...." *Pryor v. Bostwick*, 818 N.E.2d 6, 11 (Ind. Ct. App. 2004) (citing *Dye v. Young*, 655 N.E.2d 549, 550 (Ind. Ct. App. 1995)). The commentary to Guideline 3(B) provides, in pertinent part:

> If the parties disagree on their respective gross incomes, the court should include in its order the gross income it determines for each party. When the court deviates from the Guideline amount, the order or decree should also include the reason or reasons for deviation. This information becomes the starting point to determine whether or not a substantial and continuing change of circumstance occurs in the future.

In *Dye*, we found that the trial court erred by not making findings concerning the parties' incomes or completing a child support worksheet–a failure which left this court unequipped to determine whether the trial court complied with Guidelines. 655 N.E.2d at 551.

[9] On November 14, 2014, Mother filed a motion for remand in which she stated,

> 1. … neither [Father] or [Mother] submitted proposed Child Support Worksheets before, during or after the presentation of evidence.

2. [Mother] believes that the trial court should have prepared a Child Support Order or otherwise explained the method of calculating child support in its Order. Because this was not done, [Mother] believes that the Court of Appeals is likely to rule, as it did in [*Pryor*, 818 N.E.2d 6], [sic] the case be remanded back to the trial court with instructions that both parties submit proposed Child Support Worksheets and that the court then issue its Order after recalculating the same.

Because the parties agree on this issue, and because this court is unable to adequately review the trial court's determination of support without child support worksheets, we remand with instructions that both parties submit proposed child support worksheets and that the trial court then issue an order which comports with the requirements of the Guideline 3(B), and that explains any deviations therefrom.

## B. Mother's Structured Settlement Income

[10] "'Weekly gross income' is broadly defined to include not only actual income from employment but also potential income and imputed income from 'in-kind' benefits." *Ratliff v. Ratliff*, 804 N.E.2d 237, 245 (Ind. Ct. App. 2004) (citing *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind. Ct. App. 2000)). Indiana Child Support Guideline 3(A) provides, in pertinent part:

> Weekly Gross Income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, **annuities**, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, prizes, and alimony or maintenance received from other marriages. Social Security disability benefits paid for the benefit of the child must be included in the disabled parent's gross income. The disabled parent is entitled to a

credit for the amount of Social Security disability benefits paid for the benefit of the child. Specifically excluded are benefits from means-tested public assistance programs, including, but not limited to, Temporary Aid To Needy Families (TANF), Supplemental Security Income, and Food Stamps.

(emphasis added). "Furthermore, the Guidelines urge judges and practitioners to find ways to include income that would have benefited the family had it remained intact, as well as to be receptive to deviations where reasons justify them." *Knisely v. Forte*, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007) (citing *Harris v. Harris*, 800 N.E.2d 930, 939 (Ind. Ct. App. 2003)).

[11] Although it is unclear without a child support worksheet to review, based on the parties' arguments at the motion to correct errors hearing, it seems likely that the trial court did not include Mother's settlement proceeds in its calculation of her gross income. During the hearing, the parties disagreed on whether to categorize the payments as an annuity or a structured settlement. Unlike annuities, structured settlements are not specifically included in the Guidelines as gross income. Consequently, Mother contends that the two are distinct. BLACK'S LAW DICTIONARY defines "annuity" as, "A fixed sum of money payable periodically; specif., a particular amount of money that is paid each year to someone." BLACK'S LAW DICTIONARY 109 (10th ed. 2014). BLACK'S LAW DICTIONARY defines "structured settlement" as

> A settlement in which the defendant agrees to pay periodic sums to the plaintiff for a specified time.
>
>> "Especially in personal injury and product liability cases, structured settlements — i.e., those which provide for an initial cash payment followed by deferred

payments in future years, normally on some annuity basis…"

BLACK'S LAW DICTIONARY 1582 (10th ed. 2014). Aside from the fact that her settlement checks clearly state that they are "Annuity Benefit[s]," Mother's Ex. 1 & 2, Mother's argument still fails because the two concepts are so closely associated that they do not warrant different treatment in this context.

[12] At the trial court, Mother also argued that the settlement was compensation for personal injuries and so should not be considered gross income. However, the Guidelines definition of gross income includes similar types of compensation, such as workmen's compensation and disability benefits. Furthermore, this court has held that payments for personal injury may be included in the income calculation. *Knisely*, 875 N.E.2d at 340. "Guidelines urge judges and practitioners to find ways to include income that would have benefited the family had it remained intact…." *Knisely*, 875 N.E.2d at 340. Mother is not disabled, does not work despite being physically able, and supports herself with her settlement proceeds. It is quite apparent that the settlement funds would have benefited the family had it remained intact. Furthermore, this court has consistently interpreted the Guidelines' definition of gross income to be broadly inclusive. *Ratliff*, 804 N.E.2d at 245. Based on the foregoing, we think it is clear that Mother's structured settlements fall within the Guidelines' definition of gross income.

[13] Consequently, the trial court's failure to include Mother's settlement proceeds in her gross income calculation amounts to a deviation from the Guidelines.

"When the court deviates from the Guideline amount, the order or decree should also include the reason or reasons for deviation." Commentary to Child Supp. G. 3(B). On remand, the trial court should include Mother's settlement proceeds in her gross income or provide justification should it decline to do so.

## C. Whether Trial Court was Required to Calculate One Support Obligation for Both Children

[14] Father claims that the trial court improperly conducted a separate support calculation for each child in deviation of the Guidelines.[1] We addressed a similar situation in *Lamon*, and determined that, according to the Guidelines, there is a presumption that one child support calculation should be completed for all of the parties' children, *i.e.* children should be treated as a group instead of individually. 611 N.E.2d 154, 158 (Ind. Ct. App. 1993). This is done to ensure "that the [] children [are] supported, as closely as possible, as they would have been had the family remained intact." *Id*. The commentary to Guideline 1 explains the reasoning behind this presumption:

> In developing these Guidelines, a great deal of reliance was placed on the research of Thomas J. Espenshade, (Investing In Children, Urban Institute Press, 1984) generally considered the most authoritative study of household expenditure patterns…. Espenshade's estimates demonstrate that amounts spent on the children of intact households

---

[1] Without the benefit of a child support worksheet, it is unclear whether the trial court did in fact conduct two separate support calculations. However, because Mother did not file a brief, we will treat Father's claim in this regard as true for the purposes of this appeal. See *Lamon v. Lamon*, 611 N.E.2d 154 n. 2 (Ind. Ct. App. 1993). In any case, we think it prudent to address the issue to prevent unnecessary re-litigation and provide the trial court with guidance on remand as to the appropriate method of calculating support for multiple children.

rise as family income increases. *They further demonstrate at constant levels of income that expenditures decrease for each child as family size increases.*

(emphasis added). On remand, the trial court should calculate a single support obligation for both children.

# IV. Federal Tax Exemptions

Indiana Code Section 31-16-6-1.5 provides that, "A court shall specify in a child support order which parent of a child may claim the child as a dependent for purposes of federal and state taxes." The trial court did not provide as such in its orders. We note that during the hearing on Father's motion to correct errors, while addressing who should receive tax exemptions, counsel for Mother conceded this point, stating that "maybe alternating is the thing to do." Tr. p. 39. We remand with instructions that the trial court, in consideration of the factors outlined in Indiana Code Section 31-16-6-1.5(b), determine which party may claim one or both of the children as dependents for tax exemption purposes.

Najam, J., and Mathias, J., concur.